UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

AMERICAN HONDA FINANCE CORP.,
a California Corporation,

                                         Civil Action No.:
                                         7:13-CV-260 (GTS/ATB)

                              Petitioner,

             v.

ROUTE 57 DEVELOPMENT, LLC, PRIME,
L.L.C. a/k/a PRIME LLC, TOPED DEVELOPMENT,
LLC, WARNERS ROAD DEVELOPMENT, LLC,
ONONDAGA DEVELOPMENT, LLC, 81 FRONT
STREET DEVELOPMENT, LLC, ARBEL LLC,
AUBURN ROUTE 5 DEVELOPMENT LLC,
AUTOMOBILE FRANCHISE ACQUISITIONS,
LLC, B&J AUTO SALES, INC., COLLINS
LANDING DEVELOPMENT CORP.,
DEALMAKER AUTO GROUP, L.L.C.,
DEALMAKER DODGE, LLC, DEALMAKER
FORD OF CLAY, LLC, DEALMAKER NISSAN, LLC,
DEALMAKER FORD, INC., DEALMAKER HONDA
OF POTSDAM, LLC, DEALMAKER LEASING, L.L.C.,
DEALMAKER MANAGEMENT, LLC, DEALMAKER
OF OGDENSBURG, L.L.C., DEALMAKER OF
POTSDAM, LLC, DEALMAKER, L.L.C., FRANCHISE
ACQUISITIONS, LLC, IVES HILL COUNTRY
CLUB, INC., KIMBROOK ROUTE 31 DEVELOPMENT
LLC, KIMBROOK ROUTE 31 L.L.C., LIBERTY
SACKETS HARBOR LLC, LOBUT DEVELOPMENT,
LLC, RIVER NORTH I, INC., RIVER NORTH, LLC,
SIM-SAC DEVELOPMENT CORP., TOPED
MANAGEMENT SERVICES, INC., V.M. PAOLOZZI
IMPORTS, INC., THIRTY ONE DEVELOPMENT
LLC, and PHILIP J. SIMAO,

                             Respondents.

_____

# <u>MEMORANDUM OF LAW</u>

**MENTER, RUDIN & TRIVELPIECE, P.C.**
Julian B. Modesti, of Counsel
   Bar Roll No.: 507674
Teresa M. Bennett, of Counsel
   Bar Roll No.: 515025
*Attorneys for Petitioner American Honda Finance Corporation*
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1439
Telephone: (315) 474-7541

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
*Attorneys for Petitioner American Honda Finance Corporation*
Louis A. Modugno, of Counsel
   Bar Roll No.: 509152
40 West Ridgewood Avenue
Ridgewood, New Jersey 07450
Telephone: (973) 425-8660

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... i

INTRODUCTION ...................................................................................... 1

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS...........................................................................

    A.    THE LIMITED LIABILITY COMPANY RESPONDENTS ....................................... 5

          1.    RIVER NORTH, LLC AND RIVER NORTH I, INC. ................................ 5

          2.    CONTROL OVER THE OPERATIONS OF THE LIMITED LIABILITY COMPANY RESPONDENTS ............................................... 6

    B.    THE DEALMAKER RESPONDENTS ................................................... 6

    C.    THE OTHER CORPORATE RESPONDENTS ARGUMENT ............................... 8

ARGUMENT ......................................................................................... 10

    POINT I:    AHFC IS ENTITLED TO SUMMARY JUDGMENT................................. 10

          A.    AHFC IS ENTITLED TO AN ORDER PURSUANT TO CPLR §§ 5225 AND 5227 DIRECTING RESPONDENTS TO TURN OVER ALL MONEY AND PERSONAL PROPERTY IN WHICH SIMAO HAS AN INTEREST ..................................................... 10

                    1.    AHFC IS ENTITLED TO COLLECT THE OBLIGATIONS DUE AND OWING FROM RESPONDENTS TO SIMAO ............... 11

                    2.    AHFC IS ENTITLED TO AN ORDER DIRECTING RESPONDENTS TO TURN OVER ALL STOCK CERTIFICATES AND/OR OTHER DOCUMENTATION EVIDENCING SIMAO'S INTERESTS IN THE CORPORATE RESPONDENTS ................................................... 12

B. AHFC IS ENTITLED TO A "CHARGING INTEREST" IN THE DISTRIBUTIONS, PROFITS AND LOSSES ALLOCATED TO SIMAO ........................................................... 13

  1. ALL FACTORS MILITATE IN FAVOR OF A RECEIVER ............ 14

  2. AS THE LIMITED LIABILITY COMPANY RESPONDENTS LACK INDEPENDENCE FROM SIMAO, INTERFERENCE IN THE OPERATIONS IS NECESSARY AND APPROPRIATE........... 19

  3. SOME OF RESPONDENTS' OPERATING AGREEMENTS REQUIRE MANDATORY DISTRIBUTIONS FROM THE LLC ............................................................................. 23

  4 AHFC SHOULD BE SUBSTITUTED AS A MEMBER OF THE LIMITED LIABILITY COMPANY RESPONDENTS.......... 23

POINT II: AHFC IS NOT LIMITED TO THE COLLECTION OF 10% OF MONEYS RECEIVED BY SIMAO FROM THE RESPONDENTS.............. 25

POINT III: THE ACTION AGAINST AMERICAN HONDA MOTOR CO., INC. IS NOT GROUNDS TO STAY EXECUTION OF THE JUDGMENT ........... 26

POINT IV: PETITIONER IS ENTITLED TO AN AWARD OF COSTS ........................ 29

CONCLUSION ..................................................................................... 30

APPENDIX A

APPENDIX B

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*In re Albright*, 291 B.R. 538 (D. Colo. 2003) ............................................................. 21, 24

*Baker v. David A. Dorfman, P.L.L.C.*, 99 Civ. 9385, 2000 U.S. Dist. LEXIS
    10142 (SD NY July 20, 2000) ...................................................................... 14

*In re Modanlo*, 412 B.R. 715 (D. Md. 2006) ............................................................. 21, 24

### STATE CASES

*1101 Park Ave. Corp. v. Cornell*, 133 Misc. 397 (City Ct N.Y. Cty 1928) ...................... 26

*3 West 16th Street, LLC v. Ancona*, 2013 N.Y. Misc. LEXIS 4430 (Sup. Ct
    N.Y. Cty Sept. 27, 2013) ............................................................................ 20

*Bernstein v. Comm'r of Taxation & Fin.*, 200 A.D.2d 810 (3d Dep't 1994) ................... 26

*Chlopecki*, 296 A.D.2d at 641 .................................................................................. 15

*Holmes v. W.T. Grant, Inc.*, 71 Misc. 2d 486 (Sup Ct. 1972) ...................................... 28

*Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303 (2010) .................................... 14, 15

*Jones v. Palermo*, 105 Misc. 2d 405 (Sup. Ct N.Y. Cty 1980) .................................... 26

*Koroleski v. Badler*, 32 A.D.2d 810 (2d Dep't 1969) ................................................. 20

*Melluzzo v Melluzzo*, 62 A.D.2d 1061 (2d Dep't 1978) ............................................... 14

*Moskin v. Midland Bank & Trust Co.*, 96 Misc. 2d 600 (Sup. Ct. 19778) ................. 27, 28

*Mulford v. Gibbs*, 9 A.D. 490 .................................................................................... 25

*Neilson Realty Corp. v. Motor Vehicle Acci. Indemn. Corp.*, 47 Misc. 2d
    260 (Sup. Ct. Queens Cty. 1965) ................................................................ 11

*O'Brien v. Fago*, 54 Misc. 2d 203 (Sup. Ct. 1967) ..................................................... 27

*Olmstead v. Federal Trade Comm.*, 44 So. 3d 76 (Fla. 2010) .................................. 21, 24

*Paz v. Long Island R.R.*, 241 A.D.2d 486 (2d Dep't 1997) ................................................ 27

*Potash v. Port Auth.*, 279 A.D.2d 562 (2d Dep't 2001) ...................................................... 28

*Prince v Brett*, 21 A.D. 190 (2d Dep't 1897) ...................................................................... 25

*Reynders v. Reynders*, 155 A.D.2 987, 548 N.Y.S.2d 130 (4th Dep't 1989) ................. 27

*Ricatto v Ricatto* (4 A.D.3d 514 (2d Dep't 2004)) ...................................................... 19, 20

*Rosen v. Wolpert*, 244 A.D.2d 202, 664 N.Y.S.2d 910 (1st Dep't 1997) ......................... 12

*Rozales v. Pegalis & Wachsman, P.C.*, 127 A.D.2d 577 (2d Dep't 1987) ....................... 11

*Schafer v. Tyroler*, 94 Misc. 127 (City Ct N.Y. Cty 1916) ............................................... 26

*Sealy v. Sealy*, 57 A.D.2d 893, 394 N.Y.S.2d 281 (2d Dep't 1977) ................................. 15

*Shaklee Corp. v. Loehmann's Inc.*, 218 A.D.2d 511, 629 N.Y.S.2d 766 (1st
    Dep't 1995) ................................................................................................................. 11, 12

*Siemens & Halske v. Gres*, 32 A.D.2d 624 (1st Dep't 1969) ............................................. 11

*In re Wyman*, 76 A.D. 292 (3d Dep't 1902) ....................................................................... 25

## STATE STATUTES

N.Y. C.P.L.R. § 5205(d)(2) .................................................................................................. 25

N.Y. CPLR § 5225(b) .................................................................................................... 10, 29

N.Y. CPLR §5227 ........................................................................................................... 10, 12

N.Y. C.P.L.R. § 5228(a) ...................................................................................................... 14

N.Y. C.P.L.R.8101 ............................................................................................................... 29

## FEDERAL STATUTES

FED. R. CIV. P. 54(d) ........................................................................................................... 29

## OTHER AUTHORITIES

N.Y. LTD. LIAB. CO. 603(a)(3) ................................................................. 13

N.Y. LTD. LIAB. CO. 604(a) ..................................................................... 24

N.Y. LTD. LIAB. CO. 604(b) ..................................................................... 24

N.Y. LTD. LIAB. CO. 607(b) ..................................................................... 19

N.Y. LTD. LIAB. CO. 607(a) ..................................................................... 13

N.Y. LTD. LIAB. CO. 607(b) ..................................................................... 13

## INTRODUCTION

Petitioner American Honda Finance Corp ("AHFC") submits this memorandum of law in support of its motion for summary judgment pursuant to Federal Rules of Civil Procedure 56, striking the points of law of Respondents Philip J. Simao, Route 57 Development, LLC, Prime, L.L.C. a/k/a Prime LLC, Toped Development, LLC, Warners Road Development, LLC, Onondaga Development, LLC, 81 Front Street Development, LLC, Arbel LLC, Auburn Route 5 Development LLC, Automobile Franchise Acquisitions, LLC, B&J Auto Sales, Inc., Collins Landing Development Corp., DealMaker Auto Group, L.L.C., DealMaker Dodge, LLC, DealMaker Ford of Clay, LLC, DealMaker Nissan, LLC, DealMaker Ford, Inc., DealMaker Honda of Potsdam, LLC, DealMaker Leasing, L.L.C., DealMaker Management, LLC, DealMaker of Ogdensburg, L.L.C., DealMaker of Potsdam, LLC, DealMaker, L.L.C., Franchise Acquisitions, LLC, Ives Hill Country Club, Inc., Kimbrook Route 31 Development LLC, Kimbrook Route 31 L.L.C., Liberty Sackets Harbor LLC, Lobut Development, LLC, River North I, Inc., River North, LLC, Sim-Sac Development Corp., Toped Management Services, Inc., V.M. Paolozzi Imports, Inc., and Thirty One Development LLC (collectively, "Respondents") and granting AHFC's motion for summary judgment on its First through Twenty-Fourth Claims.

## PRELIMINARY STATEMENT

In 2012, the United States District Court, Northern District of New York, entered judgment in favor of AHFC and against Philip J. Simao ("Simao") in the principal amount of $3,622,715.03 (hereinafter, the "Judgment"). The Judgment was subsequently

affirmed by the U.S. Court of Appeals for the Second Circuit, in 2013.  This action to collect on the Judgment followed.

Other than certain real property, boats and vehicles allegedly encumbered by mortgages and/or loans, Simao's only other assets appear to consist of his substantial ownership interests in the entity Respondents.  Despite having received more than $3,000,000 in distributions in 2012 from the entity Respondents, Simao has failed and/or refused to repay a single penny of the Judgment.  AHFC hereby seeks to recover on the Judgment by disposing of Simao's interests in the corporate Respondents, by charging Simao's interests in the limited liability company Respondents, and by recovering money and personal property belonging to Simao that has been transferred to Respondents to avoid paying the Judgment.

To be clear, AHFC is seeking to recover from the limited liability company Respondents the money or personal property in which Simao has an interest.  AHFC is not seeking to liquidate or dispose of the limited liability company Respondents' assets, or to recover property that originally belonged to any individual or entity other than Simao.  AHFC is simply asking this Court to prevent Simao from shielding his assets and/or diminishing his financial interests in the entity Respondents by refusing to pay dividends or declare distributions routinely paid by the limited liability company Respondents in the past, and to prevent Simao from receiving money from the entity Respondents without allocation of those payments to the Judgment.

For the reasons more fully set forth below, AHFC requests an Order (1) directing the entity Respondents to pay over to AHFC any money in which Simao has an interest,

2

or so much of it as is sufficient to satisfy the Judgment, including any debt or obligation due and owing from the entity Respondents to Simao; and (2) if the amount to be so paid is insufficient to satisfy the Judgment plus interest, (i) directing Respondents to deliver to a designated U.S. Marshall any other personal property in which Simao has an interest, (including all documents evidencing Simao's ownership interest in the corporation Respondents, or so much of it as is sufficient to satisfy the Judgment plus interest), to be sold by such U.S. Marshall to satisfy the Judgment plus interest; and (ii) charging Simao's interest in the limited liability company Respondents with payment of the unsatisfied amount of the Judgment plus interest.

AHFC also requests that the Court appoint a Receiver authorized (1) to review Respondents' books and records within ten (10) days from the date of the order approving said appointment, and every thirty (30) days thereafter; (2) to accept Simao's membership interests in the limited liability company Respondents; (3) to receive, on an ongoing and continuing basis until the Judgment with interest is paid in full, all profits of the entity Respondents, and all distributions, dividends and bonuses declared by the entity Respondents and/or the Receiver, to which Simao would otherwise be entitled.

AHFC also requests such other and further relief as the Court deems just and proper including the costs and disbursements of this action, pursuant to Federal Rules of Civil Procedure 54(d) and Civil Practice Law and Rules sections 8101, 5225 and 5227.

## STATEMENT OF FACTS

In February of 2010, AHFC commenced an action against V.M. Paolozzi Imports, Inc., DealMaker of Potsdam, LLC (collectively, the "Dealerships") and Simao, which

alleged breaches of certain wholesale finance agreements, notes and security agreements, and continuing guarantees (Exhibit 1, ¶¶ 10, 11; Exhibit 2, ¶¶ 10, 11). AHFC alleged that the Dealerships failed to hold the proceeds of the sale of units of inventory in trust and to pay said proceeds to AHFC as required by the wholesale finance agreements, commonly referred to as "out of trust." *See* Modesti Aff. Ex. A, ¶¶ 10-11. The Dealerships asserted a counterclaim against AHFC alleging that AHFC acted in bad faith in the performance of its contractual obligations, in violation of the Automobile Dealers' Day in Court Act. *See* Modesti Aff. Ex. B, ¶¶ 104-109.

On or about March 29, 2012, the Judgment was entered in the United States District Court for the Northern District of New York, in favor of AHFC, and against Simao, in the aggregate principal amount of $3,622,715.03 (Exhibit 1, ¶¶ 3, 14-16, Ex. A; Exhibit 2, ¶¶ 3, 14-16). The Judgment is comprised of a judgment in the principal amount of $2,120,493.09 against V.M. Paolozzi Imports, Inc., Mark Picarazzi and Simao, jointly and severally (Exhibit 1, ¶ 14; Exhibit 2, ¶ 14), and a judgment in the principal amount of $1,502,221.94 against DealMaker Honda of Potsdam, LLC and Simao, jointly and severally (Exhibit 1, ¶ 15; Exhibit 2, ¶ 15). AHFC also obtained a judgment against V.M. Paolozzi Imports, Inc. in the amount of $203,189.60, which amount is not included in the computation of the Judgment (Exhibit 1, ¶ 16; Exhibit 2, ¶ 16).

The District Court for the Northern District of New York dismissed the Dealerships' and Simao's counterclaim under the Automobile Dealers' Day in Court Act, stating that AHFC was not an automobile manufacturer and had not acted in bad faith.

*See* Modesti Aff. Ex. C, at 24-25.   The District Court's Memorandum-Decision and Order was upheld on appeal, and the Judgment affirmed. *See* Modesti Aff. Ex. D.

To date, AHFC has only received $690.38 in payment of the Judgment (Exhibit 3, at 6; Exhibit 4, at 20).   As of July 4, 2014, there was a balance due and owing from Simao to AHFC in the amount of $3,631,809.53 including principal and accrued post-judgment interest at the federal rate (0.11% per annum). *See* Modesti Aff. ¶ 10.

## A. THE LIMITED LIABILITY COMPANY RESPONDENTS

The Limited Liability Company Respondents consist of entities in which Simao holds a 99% membership interest:   Route 57 Development, LLC, Prime, L.L.C., Toped Development, LLC, Warners Road Development, LLC, Onondaga Development, LLC, 81 Front Street Development, LLC, Arbel LLC, Auburn Route 5 Development LLC, Automobile Franchise Acquisitions, LLC, Franchise Acquisitions, LLC, Kimbrook Route 31 Development LLC, Kimbrook Route 31 L.L.C., Liberty Sackets Harbor LLC, Lobut Development, LLC, River North, LLC and Thirty One Development LLC (the "Limited Liability Company Respondents") (*see* Exhibit 5, at 5[A][1]-[9], [20]-[24], [26]).

## 1. RIVER NORTH, LLC AND RIVER NORTH I, INC.

River North, LLC holds a 1% membership interest in each of afore-referenced Limited Liability Company Respondents (Exhibit 5, at 5[A][1]-[9], [20]-[24], [26]).

Simao holds a 99% membership interest in River North, LLC (Exhibit 5, at 5[A][25]).   River North I, Inc. holds a 1% membership interest in River North, LLC (Exhibit 5, at 5[A][25]).   Simao owns 100% of the shares of River North I, Inc. (Exhibit 5, at 5[B][5]). Simao is the Managing Member of River North, LLC (Exhibit 5, at

7[A][25]) and the Managing Shareholder of River North I, Inc. (Exhibit 5, at 7[B][5]). Simao claims that he does not receive wages or other cash benefits from River North, LLC or River North I, Inc. (*see* Exhibit 5, at 8).

### 2. CONTROL OVER THE OPERATIONS OF THE LIMITED LIABILITY COMPANY RESPONDENTS

Simao is the Managing Member of each of the Limited Liability Company Respondents (Exhibit 5, at 7[A]). As the Managing Member, Simao has complete control over the operations of the Limited Liability Company Respondents (*see* Exhibits 9, 23, 45, at art. IV, § 6; Exhibits 13, 19, 27, at § 6.1; Exhibits 28, 29, 30, 34, 38, 41, 42, 47, 53, at §§ 1.32, 7.1, 7.3).

Simao claims that he does not receive wages or other cash benefits from any of the Limited Liability Company Respondents (*see* Exhibit 5, at 8).

Simao has taken distributions from certain of the Limited Liability Company Respondents from 2010 through 2012 as set forth in Appendix A (*see also* Exhibit 1, ¶¶ 29, 39, 49, 59, 69, 79, 160; Exhibit 2, ¶¶ 29, 39, 49, 59, 69, 79, 160; Exhibits 6, 7, 11, 12, 14, 15, 17, 18, 20, 21, 24, 25, 36, 37, 39, 40, 43, 44, 46, 47).

Simao has sold certain assets of the Limited Liability Company Respondents as set forth in Appendix A (*see also* Exhibits 8, 10, 22, 26).

### B. THE DEALMAKER RESPONDENTS

The limited liability company and corporate Respondents in which Simao alleges a 75% ownership interest consist of the "DealMaker Respondents," namely DealMaker Auto Group, L.L.C., DealMaker Dodge, LLC, DealMaker Ford of Clay, LLC, DealMaker

Nissan, LLC, DealMaker Ford, Inc., DealMaker Honda of Potsdam, LLC, DealMaker Leasing, L.L.C., DealMaker Management, LLC, DealMaker of Ogdensburg, L.L.C., DealMaker of Potsdam, LLC, and DealMaker, L.L.C. (collectively, the "DealMaker Respondents").

Simao claims to hold a 75% membership interest in the DealMaker limited liability company Respondents, with the exception of DealMaker Management, LLC (Exhibit 5, at 5[A][10]-[19]).   With respect to DealMaker Management, LLC, Respondents make two inconsistent representations:  (1) "DealMaker Management, LLC is not an entity that is owned or controlled by Respondent Philip J. Simao or either of the two other judgment debtors" (Exhibit 5, at 5{A][16]); and (2) that Simao is the Managing Member of DealMaker Management, LLC (Exhibit 5, at 7[A][16]).

Mark Picarazzi holds a 25% membership interest in the DealMaker limited liability company Respondents (Exhibit 5, at 5[A][10]-[19]).[1]

---

[1] In 2012, Mr. Picarazzi filed for relief under the U.S. Bankruptcy Code in the United States Bankruptcy Court in the Middle District of Florida (Case No.: 6:12-BK-03695-ABB).  In his Schedule B – Personal Property filing, under questions 13 and 14, Mr. Picarazzi stated that he had no interest in "incorporated or unincorporated businesses" or "partnerships or joint ventures".  He did state on his Statement of Financial Affairs, at question 18, that he was an "officer" of B&J Auto Sales Inc., Dealmaker Ford Inc., Dealmaker LLC, Dealmaker Dodge LLC, Dealmaker Ford of Clay LLC, Dealmaker Nissan LLC, and VM Paollozzi Imports but not that he held any equity interest in those entities (pg. 39). These are the only entities which he states he had any interest as "an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity…within six years immediately preceding the commencement of [his] case, or in which [he] owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of [his] case." Given that Mr. Picarazzi did not include on his Schedule B his ownership interests in the various Respondents in this action, the Ch. 7 Trustee would not have known them to be assets and would not have sought to collect, sell or transfer them. Had Mr. Picarazzi's equity interests in the various Respondents in this action

Simao is the Managing Member of each of the DealMaker Respondents, including DealMaker Management, LLC (*see* Exhibit 5, at 7[A][10]-[19]).

As to the corporate DealMaker Respondents, DealMaker Ford, Inc. and V.M. Paolozzi Imports, Inc., Simao owns 975 shares of common stock and 5,655 shares of preferred stock in DealMaker Ford, Inc. (Exhibit 5, at 5[B][3]), and is the Managing Shareholder (Exhibit 5, at 7[B][3]).  Mark Picarazzi owns 325 shares of common stock and 1,885 shares of preferred stock in DealMaker Ford, Inc. (Exhibit 5, at 5[B][3]).

Simao has failed to account for his ownership interest in V.M. Paolozzi Imports, Inc. (*see* Exhibit 5, at 5[B]).  Upon information and belief, Simao is the Managing Shareholder of V.M. Paolozzi Imports, Inc.

Simao claims to receive money from one or more of the DealMaker Respondents (Exhibit 1, ¶ 134); however, Respondents did not turn over records for all of the DealMaker Respondents (*see* Modesti Aff. 20) and, therefore, AHFC is not in possession of information regarding distributions or sales of assets owned by the DealMaker Respondents.  Simao claims that he does not receive wages or other cash benefits from any of the DealMaker Respondents (*see* Exhibit 5, at 8).

## C. THE OTHER CORPORATE RESPONDENTS

Simao is the majority shareholder in each of the Corporate Respondents, B&J Auto Sales, Inc., Collins Landing Development Corp., Ives Hill Country Club, Sim-Sac

---

been properly disclosed in his Bankruptcy case, Mr. Picarazzi would likely not retain any interest in those Respondents.

Development Corp., and Toped Management Services, Inc. (the "Corporate Respondents").

Simao owns 112.5 shares of common stock of B&J Auto Sales, Inc. (Exhibit 5, at 5[B][1]). Mark Picarazzi owns 37.5 shares of common stock in B&J Auto Sales, Inc. (Exhibit 5, at 5[B][1]). The 2012 Balance Sheet of B&J Auto Sales, Inc. shows a "Shareholder Loan – PJS – Other" in the amount of $1,263,908.85 (Exhibit 31).

Simao owns 100% of the issued shares of Collins Landing Development Corp., Ives Hill County Club, Inc., Sim-Sac Development Corp. and Toped Management Services, Inc. (Exhibit 5, at 5[B][2], [4], [6]-[7]).

The 2012 Balance Sheet of Collins Landing Development Corp. shows a "Long Term Liabilit[y] . . . Due to PJS – Other" in the amount of $269,274.93, which loan did not exist prior to 2012 (Exhibit 32).

The 2012 Balance Sheet of Ives Hill Country Club, Inc. shows a "Note Payable – Shareholder – Other" in the amount of $1,202,164.04, which increased from $863,784.20 as of year-end 2010 (Exhibit 35).

The 2012 Balance Sheet of Sim-Sac Development Corp. shows a "Current Liabilit[y] . . . Due to PJ" in the amount of $171,027.37 (Exhibit 49).

The 2012 Balance Sheet of Toped Management Services, Inc. shows a "Long Term Liabilit[y] . . . Due to PJS" in the amount of 1,016,302 (Exhibit 50).

Respondents have failed and/or refused to deliver loan documents evidencing the terms of repayment of the loans allegedly made by Simao to B&J Auto Sales, Inc.,

Collins Landing Development Corp., Ives Hill Country Club, Inc., Sim-Sac Development

Corp. or Toped Management Services, Inc.  *See* Modesti Aff. ¶ 19.

## ARGUMENT

### POINT I

### AHFC IS ENTITLED TO SUMMARY JUDGMENT

**A. AHFC IS ENTITLED TO AN ORDER PURSUANT TO CPLR §§ 5225 AND 5227 DIRECTING RESPONDENTS TO TURN OVER ALL MONEY AND PERSONAL PROPERTY IN WHICH SIMAO HAS AN INTEREST**

As of July 4, 2014, AHFC is owed $3,631,809.53, with interest continuing to

accrue at the rate of 0.11 per annum.  To avoid paying AHFC's Judgment, Simao has

attempted to shield his property interests in all of the entity Respondents.

Civil Practice Law and Rules section 5225, made applicable pursuant to Federal

Rules of Civil Procedure 69(a)(1), provides:

> "Upon a special proceeding commenced by the judgment creditor, against a
> person in possession or custody of money or other personal property in
> which the judgment debtor has an interest, . . . where it is shown that the
> judgment debtor is entitled to the possession of such property or that the
> judgment creditor's rights to the property are superior to those of the
> transferee, the court shall require such person to pay the money, or so much
> of it as is sufficient to satisfy the judgment to the judgment creditor and, if
> the amount to be so paid is insufficient to satisfy the judgment, to deliver
> any other personal property, or so much of it as is of sufficient value to
> satisfy the judgment, to a designated sheriff."

N.Y. C.P.L.R. § 5225(b).  Pursuant to Civil Practice Law and Rules section 5227, AHFC

is also entitled to collect any debt due and owing from the Respondents to Simao.  N.Y.

C.P.L.R. § 5227.

10

"CPLR 5225 (subd. [b]) authorizes a special proceeding against a person who is a transferee of money from the debtor either where the debtor is entitled to the money or where the judgment creditor's rights are superior to those of the transferee." *Siemens & Halske v. Gres*, 32 A.D.2d 624 (1st Dep't 1969). "[P]roceedings pursuant to related sections 5225 (subd. [b]) and 5227 of the CPLR are plenary in that the court can adjudicate rights and interests in the debt or fund which is the subject matter of the proceeding." *Neilson Realty Corp. v. Motor Vehicle Acci. Indemn. Corp.*, 47 Misc. 2d 260, 262 (Sup. Ct. Queens Cty. 1965).

The provisions of Civil Practice Law and Rules section 5225 apply equally to entities in possession of money or personal property belonging to the judgment debtor. *See, e.g.*, *Shaklee Corp. v. Loehmann's Inc.*, 218 A.D.2d 511, 629 N.Y.S.2d 766, 766-767 (1st Dep't 1995); *Rozales v. Pegalis & Wachsman, P.C.*, 127 A.D.2d 577, 578 (2d Dep't 1987).

### 1. AHFC IS ENTITLED TO COLLECT THE OBLIGATIONS DUE AND OWING FROM RESPONDENTS TO SIMAO.

The Balance Sheets provided by Respondents in discovery indicate that there are loans due and payable to Simao from certain corporate Respondents, including B&J Auto Sales, Inc. ("Shareholder Loan – PJS – Other" as of December 31, 2012 in the amount of $1,263,908.85); Collins Landing Development Corp. ("Long Term Liabilit[y] . . . Due to PJS – Other" as of December 31, 2012 in the amount of $269,274.93); Ives Hill Country Club, Inc. ("Note Payable – Shareholder – Other" as of December 31, 2012 in the amount of $1,202,164.04); Sim-Sac Development Corp. ("Current Liabilit[y] . . . 2800 – Due PJ"

11

as of December 31, 2012 in the amount of $171,027.37); and Toped Management Services, Inc. ("Long Term Liabilit[y] . . . Due to PJS" as of December 31, 2012 in the amount of $1,016,302.01) (*see* Exhibits 31, 32, 35, 49, 50).

Respondents have failed and/or refused to deliver documentation supporting the alleged obligations due and owing to Simao (*see* Modesti Aff. ¶ 19).   Therefore, appointment of a Receiver is necessary to review the books and records of the entity Respondents referenced above (*see infra* Point I.B.1).  If these Respondents are unable to provide such documentation, the above-referenced Respondents must be compelled to attorn or make some similar kind of commitment to repay the debt.  *See Shalkee Corp.*, 218 A.D.2d at 767.

AHFC is entitled to an Order directing B&J Auto Sales, Inc., Collins Landing Development Corp., Ives Hill Country Club, Inc., Sim-Sac Development Corp. and Toped Management Services, Inc. to pay over to AHFC all such obligations due and owing to Simao.  *See* N.Y. C.P.L.R. § 5227.

### 2.  AHFC IS ENTITLED TO AN ORDER DIRECTING RESPONDENTS TO TURN OVER ALL STOCK CERTIFICATES AND/OR OTHER DOCUMENTATION EVIDENCING SIMAO'S INTERESTS IN THE CORPORATE RESPONDENTS.

Stock certificates are considered personal property subject to turnover to the sheriff pursuant to Civil Practice Law and Rules section 5525(b).  *See Rosen v. Wolpert*, 244 A.D.2d 202, 664 N.Y.S.2d 910, 911 (1st Dep't 1997).  Simao possesses ownership interests in the following entity Respondents:  B&J Auto Sales, Inc. (112.5 common shares); Collins Landing Development Corp. (100% ownership interest); DealMaker

Ford, Inc. (975 common shares, 5,655 preferred shares); Ives Hill Country Club, Inc. (100% ownership interest); River North I, Inc. (100% ownership interest); Sim-Sac Development Corp. (100% ownership interest); and Toped Management Services, Inc. (100% ownership interest) (*see* Exhibit 5 at 5[B]).

AHFC is therefore entitled to an Order granting judgment on its tenth, eleventh, fourteenth and twentieth through twenty-second claims, and directing Simao and/or any other Respondent in possession to turn over all stock certificates or other documentation evidencing Simao's ownership interests to a designated U.S. Marshall, for public sale.

## B. AHFC IS ENTITLED TO A "CHARGING INTEREST" IN THE DISTRIBUTIONS, PROFITS AND LOSSES ALLOCATED TO SIMAO

Limited Liability Company Law section 607(a) provides:

> "On application to the court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest."

N.Y. LTD. LIAB. CO. 607(a). An assignee of a membership interest is entitled "to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled[.]" N.Y. LTD. LIAB. CO. 603(a)(3).

AHFC's first through ninth, twelfth, thirteenth, fifteenth through nineteenth, and twenty-third claims seek an Order charging Simao's membership interests in the limited liability company Respondents (*see* Exhibit 1, ¶¶ 33[b], 43[b], 53[b], 63[b], 73[b], 83[b], 92[b], 101[b], 110[b], 139[d], 148[b], 164[b], 174[b], 184[b], 194[b], 203[b], 230[b]). There is no genuine dispute that AHFC is a judgment creditor (*see* Exhibit 1 at ¶ 3, Ex.

13

A; Exhibit 2 at ¶ 3) or that judgment debtor holds an interest in each of the limited liability company Respondents with the exception of DealMaker Management, LLC (*see* Exhibit 5, at 5). As such, AHFC is "entitled to assignment of [Simao's] interest" in the limited liability company Respondents. *Baker v. David A. Dorfman, P.L.L.C.*, 99 Civ. 9385, 2000 U.S. Dist. LEXIS 10142, at *22 (SD NY July 20, 2000).

By reason of the foregoing, AHFC respectfully requests an Order charging Simao's interests in the limited liability company Respondents with payment of the Judgment plus interest.

## 1. ALL FACTORS MILITATE IN FAVOR OF A RECEIVER

Pursuant to Civil Practice Law and Rules section 5228, "the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment." N.Y. C.P.L.R. § 5228(a). "The appointment of a receiver pursuant to Section 5228(a) is a matter within the court's discretion." *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 317 (2010). Special reasons exist to justify appointment of a Receiver.

Factors militating in favor of appointment of a Receiver include (1) lack of an alternative remedy available to the creditor; (2) whether the appointment of a Receiver will increase the likelihood of satisfaction of the judgment; (3) "the risk of insolvency and a substantial possibility of fraud against creditors" (*Melluzzo v Melluzzo*, 62 A.D.2d 1061, 1061 (2d Dep't 1978)); (4) the financial status of the judgment debtor, the number of judgments entered against the judgment debtor, and the amount of any liens attached

14

to real property owned by the judgment debtor. *See Chlopecki*, 296 A.D.2d at 641.
Further, where a judgment debtor has failed and/or refused to provide "acceptable
evidence of the financial condition of the" entities, the appointment of a receiver is
appropriate. *See Sealy v. Sealy*, 57 A.D.2d 893, 394 N.Y.S.2d 281, 282 (2d Dep't 1977).

"A receivership has been held especially appropriate when the property interest
involved is intangible, lacks a ready market, and presents nothing that a sheriff can work
with at an auction, such as the interest of a psychiatrist/judgment debtor in a professional
corporation of which he is a member." *Hotel 71 Mezz Lender LLC*, 14 N.Y.3d at 317.

In *Hotel 71 Mezz Lender LLC v. Falor*, the New York Court of Appeals held:
"Supreme Court did not abuse its discretion in appointing a postjudgment receiver to
administer defendants' intangible personal property for purposes of satisfying plaintiff's
outstanding" judgment. *Id.* at 318.  In exercising its discretion, the Court of Appeals
relied on the fact that the judgment debtor's property consisted of "intangible ownership
interests in various limited liability companies"; that "there appear[ed] to be a danger of
insolvency"; and that the judgment creditor "submitted extensive documentation that
strongly suggest[ed] [judgment debtor's] precarious financial condition, and that an
identifiable risk exists that [judgment debtor] will be unable to satisfy a future judgment."
*Id.* at 317-318.

Here, AHFC seeks the appointment of a Receiver to receive and hold Simao's
membership interests in the limited liability company Respondents, to review the books
and records of the limited liability company Respondents, and to receive all profits,
distributions and/or bonuses to which Simao has an interest.  While Respondents

-15-

complain that a Receiver is not appropriate at this juncture because Petitioner has not first sought other remedies (*see* Exhibit 2 at ¶ 245), Respondents have failed to identify what other remedies are available to AHFC to obtain satisfaction of the Judgment. Respondents admit that, while Simao owns certain real property and boats, those "items of property are encumbered by mortgages and/or loans" (Exhibit 5, at 3).

In fact, in addition to Petitioner's Judgment, which currently has a balance due and owing of $3,631,809.53 (*see* Modesti Aff. ¶ 10), **Simao has at least 23 other judgments entered against him in the aggregate principal amount of at least $2.4 million.** *See* Modesti Aff. 16, Ex. H. **Moreover, Simao also has at least four civil actions pending against him by US Bank, Keybank, CSMC and Freeman Interiors to foreclose on the mortgages and loans referenced by the Respondents.** *See* Modesti Aff. ¶ 13[c], [d], [f], [g], Ex. G.

Further, Simao effectively controls each of the limited liability company Respondents. He owns 99% of each of the Limited Liability Company Respondents and owns 75% of the DealMaker limited liability company Respondents (*see* Exhibit 5, at 5[A]). He is the Managing Member of all of the Respondents which are limited liability companies (*see* Exhibit 5, at 7). As the Managing Member, Simao has sole and exclusive control over the operations of the limited liability company Respondents without any input from other members, including the discretion (or *obligation* under the LLC operating agreements) to dispose of assets and declare distributions (*see* Appendix B; *see also* Exhibits 9, 23, 45, at art. IV, § 6; Exhibits 13, 19, 27, at § 6.1; Exhibits 28, 29, 30, 34, 38, 41, 42, 47, 53, §§ 1.32, 7.1, 7.3; Exhibit 33, at § 5.1). Simao has the authority to

withhold all distributions, to retain assets and/or to divert funds, in order to avoid the payment of the Judgment and defraud creditors (*see id.*).

Simao has declared distributions from many of the limited liability company Respondents since the commencement of the underlying action in 2010 in which the Judgment was entered. From the records provided by Respondents (which are incomplete at best (*see* Modesti Aff. ¶¶ 19-20)), despite owing millions to AHFC, which he has failed to pay, Simao received distributions of more than $5 million between 2010 and 2012. He took distributions of at least $2,425,786 in 2010, $1,087,894 in 2011, and $3,145,248 in 2012 (*see* Appendix A; *see also* Exhibit 1, ¶¶ 29, 39, 49, 59, 69, 79, 160; Exhibit 2, ¶¶ 29, 39, 49, 59, 69, 79, 160; Exhibits 6, 7, 11, 12, 14, 15, 17, 18, 20, 21, 24, 25, 36, 37, 39, 40, 43, 44, 46, 47). The distributions received by Simao from 2010 to 2012 were sufficient to fully satisfy the Judgment, but rather than use that money to pay his obligations, Simao put that money in his pocket.

No distributions were made to any other members (*see id.*). Many of the larger distributions came after the disposition of assets of the entity Respondents (*see* Appendix A; *see also* Exhibits 8, 10, 22, 26).

This is not the first time Simao has put money in his pocket rather than pay AHFC. In fact, that is precisely why the Judgment was entered in the first place. Simao's companies were selling inventory out of trust; that is, they were selling AHFC's collateral, and failing and/or refusing to pay back the floor plan financing advanced by AHFC to purchase the item of collateral. *See* Modesti Aff. ¶¶ 4, 5, Ex. A.

It is clear from the Balance Sheets provided by Respondents that there has been extensive commingling of assets between the various Respondents (*see* Exhibits 7, 12, 15, 18, 21, 24, 37, 40, 44, 52). Since the Judgment was entered, Simao has made new loans and/or increased the balance of the loans to many of the corporate Respondents (*see* Exhibits 31, 32, 35, 49, 50). Respondents have failed to provide evidence of the payment terms of these loans, which was the subject of AHFC's document demand (*see* Exhibit 4, at 8). Upon information and belief, Simao made these loans to avoid paying the Judgment.

The appointment of a Receiver to oversee the finances of the entity Respondents will prevent Simao from taking distributions without properly paying those distributions to AHFC. The appointment of a Receiver will also prevent Simao from receiving loan repayments without properly paying those monies to AHFC. Simao has complete control over all of the limited liability company Respondents and is hiding his assets in those entities to avoid the payment of his obligations. Equity demands that a Receiver be appointed to prevent further fraud against AHFC.

Petitioner respectfully requests that Respondents' eighth through thirteenth points of law be stricken, and that a Receiver be appointed to (1) review the books and records of Respondents within ten (10) days from the date of a court order approving said appointment, and every thirty (30) days thereafter; (2) accept Simao's membership interest in the limited liability company Respondents; and (3) receive from the Respondents all of the profits, distributions, dividends and bonuses to which Simao

would otherwise be entitled, on an ongoing and continuing basis until payment in full of the Judgment with interest is satisfied.

## 2. AS THE LIMITED LIABILITY COMPANY RESPONDENTS LACK INDEPENDENCE FROM SIMAO, INTERFERENCE IN THE OPERATIONS IS NECESSARY AND APPROPRIATE

AHFC has demonstrated that the Respondents which are limited liability companies are not independent of Simao. While it is generally true that a creditor has no "right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company" (N.Y. LTD. LIAB. CO. 607[b]), courts have held that a judgment creditor may affect the operation of a limited liability company where there is a lack of independence between the member and the limited liability company, and where the failure to affect the operation of the limited liability company would serve to diminish the judgment debtor's financial interest in the limited liability company. Simao has repeatedly shown his propensity for moving funds around to avoid payment of the Judgment owed to AHFC. This absence of independence requires the Court's involvement in the operations of the limited liability company Respondents.

For example, in *Ricatto v Ricatto* (4 A.D.3d 514 (2d Dep't 2004)), the court restrained the defendant from disposing of or diminishing his interests in a number of limited liability companies. *Id.* at 515. The limited liability companies moved for an order lifting the restraint, arguing that such a restraint could not operate to prevent the limited liability companies' operations, including the disposition of assets. *Id.*

19

In seeking to lift the restraint, the limited liability companies relied upon the principle that a member's interest "is considered personal property, and he has no interest in specific real property owned by the LLCs." *Id.* The court disagreed, finding that the limited liability companies "failed to demonstrate that the LLCs operated independently of the defendant . . .." *Id.* at 516; *see also Koroleski v. Badler*, 32 A.D.2d 810, 811 (2d Dep't 1969) (holding that "the judgment debtor retained sufficient control over the fund in question to render the fund subject to execution"); *3 West 16th Street, LLC v. Ancona*, 2013 N.Y. Misc. LEXIS 4430, at *10 (Sup. Ct N.Y. Cty Sept. 27, 2013) (providing in dicta "that a creditor may be able to foreclose on the member's interest in the limited liability company and become owner of its financial rights in the company, and thus, obtain more authority than a mere assignee").

In finding a lack of independence between the defendant and the limited liability companies, the court in *Ricatto* relied upon several relevant factors. First, the court relied upon the fact that the defendant provided all financing for the acquisition and operation of the assets of the limited liability companies in exchange for his 50% membership interest in the limited liability companies, whereas the other member had only contributed "sweat equity." *Ricatto*, 4 A.D.3d at 516. Second, the court relied upon the fact that a majority vote was required to transfer or dispose of assets, and therefore defendant's consent was necessary to effectuate any such transaction. *See id.*

Essentially, the *Ricatto* court closed the loophole that allowed judgment debtors to shield assets from creditors by transferring those assets to a wholly owned and controlled limited liability company. Other states have followed suit, holding "that a court may

20

order a judgment debtor to surrender all right, title, and interest in the debtor's single-member LLC to satisfy an outstanding judgment." *Olmstead v. Federal Trade Comm.*, 44 So. 3d 76, 83 (Fla. 2010); *see also In re Albright*, 291 B.R. 538, 540 (D. Colo. 2003) ("Because there are no other members of the LLC, the entire membership interest passed to the bankruptcy estate[.]"); *In re Modanlo*, 412 B.R. 715, 727 (D. Md. 2006) (same).

Here, there can be no question that there is a lack of independence between Simao and each of the Limited Liability Company Respondents.  Simao wholly owns and controls each of the Limited Liability Company Respondents, through his individual ownership interests in the Limited Liability Company Respondents (99%) (*see* Exhibit 5, at 5[A]), through is sole and exclusive authority as Managing Member of the Limited Liability Company Respondents (*see* Appendix B; *see also* Exhibits 9, 23, 45, at art. IV, § 6; Exhibits 13, 19, 27, at § 6.1; Exhibits 28, 29, 30, 34, 38, 41, 42, 47, 53, §§ 1.32, 7.1, 7.3; Exhibit 33, at § 5.1), and through his ownership interests in the minority members of the Limited Liability Company Respondents, River North, LLC and River North I, Inc. (*see* Exhibit 5, at 5).

River North, LLC is the only other member of the Limited Liability Company Respondents, holding a 1% membership interest in each (*see id.*).  River North, LLC is owned by Simao (99%) and River North I, Inc. (1%) (*see id.*). But River North I, Inc. is wholly owned by Simao (*see* Exhibit 5, at 5[B]).

Simao owns 75% of the DealMaker limited liability company Respondents (*see* Exhibit 5, at 5[A]).  The Operating Agreements of the DealMaker limited liability company Respondents provide that Simao (or another appointed by Simao)

21

"shall have full, exclusive, and complete discretion, power, and authority . .
. to manage, control, administer, and operate the business and affairs of the
Company for the purposes herein stated, and to make all decisions affecting
such business and affairs[.]"

(Exhibit 33 at §§ 5.1[a], [b]).  Simao's authority includes the authority (1) "to own, sell,

convey, assign, mortgage, or lease any real estate and any personal property" (Exhibit 33,

at § 5.1[b][ii]); and   (2) to determine whether to make a distribution of Cash Flow

(Exhibit 33, at § 4.1[b]).

There is clearly no independence between Simao and the limited liability company

Respondents.  Simao is in sole and exclusive control of the limited liability company

Respondents, permitted to dispose of assets and to declare distributions without input

from any other member.  In fact, Simao has caused assets of the limited liability company

Respondents to be disposed of, and has declared substantial distributions to himself only

(and not to the other members of the limited liability company Respondents) from 2010

to 2012 (see Appendix A; see also Exhibit 1, ¶¶ 29, 39, 49, 59, 69, 79, 160; Exhibit 2, ¶¶

29, 39, 49, 59, 69, 79, 160; Exhibits 6, 7, 11, 12, 14, 15, 17, 18, 20, 21, 24, 25, 36, 37, 39,

40, 43, 44, 46, 47).  Simao has failed and/or refused to voluntarily pay a single penny of

those distributions to AHFC to satisfy the Judgment (see Exhibit 3, at 6; Exhibit 4, at 20).

To be clear, AHFC is not seeking an Order restraining Simao from operating the

limited liability company Respondents in the ordinary course of business.  AHFC is

seeking an Order permitting the Receiver (1) to review the limited liability company

Respondents' books and records; (2) to determine in his sole discretion when to declare a

distribution of cash flow, in accordance with the express terms of the Operating

22

Agreements governing the limited liability company Respondents; and (3) to receive, on an ongoing and continuing basis until the Judgment with interest is paid in full, all profits of the limited liability company Respondents, and all distributions and/or bonuses declared by the entity Respondents and/or the Receiver, to which Simao would otherwise be entitled.

### 3. SOME OF RESPONDENTS' OPERATING AGREEMENTS REQUIRE MANDATORY DISTRIBUTIONS FROM THE LLC

In the alternative, AHFC requests an Order compelling Simao to declare a distribution of the Net Cash Flow determined by the Receiver for Toped Development, LLC, Warners Road Development, LLC, Prime, L.L.C., Kimbrook Route 31 L.L.C., Auburn Route 5 Development LLC, 81 Front Street Development, LLC, and each of the DealMaker limited liability company Respondents.   The Operating Agreements governing the affairs of these limited liability company Respondents **require that a distribution be declared yearly to distribute Net Cash Flow** (*see* Exhibit 16, at art. XVII; Exhibits 13, 19, 27, at § 8.7; Exhibit 33, at § 4.1[b]; Exhibits 29, 41, at § 9.8). Therefore, at a minimum, the Receiver must be authorized to determine Net Cash Flow, and Simao compelled to distribute that amount to the members no later than ninety days after the end of the taxable year, as set forth in the Operating Agreements.

### 4. AHFC SHOULD BE SUBSTITUTED AS A MEMBER OF THE LIMITED LIABILITY COMPANY RESPONDENTS.

Limited Liability Company Law section 604(a) provides that an assignee of a membership interest may become a member of the limited liability company upon "the vote or written consent of at least a majority in interest of the members, other than the

member who assigned or proposes to assign such membership interest." N.Y. LTD. LIAB. CO. 604(a); *see also* Exhibits 9, 23, 45, at art. VI, § 3; Exhibit 16; Exhibits 28, 34, 38, 42, 47, 53, at § 11.4; Exhibit 30, at § 8.6). Certain of the Operating Agreements require the consent of "[a]ll of the other Members . . . to the transfer and substitution . . ." (*see* Exhibits 13, 19, 27, 29, 41, § 10.3; Exhibit 33).

> "An assignee who has become a member has, to the extent assigned, the rights, powers, preferences and limitations and is subject to the restrictions and liabilities, of a member under the articles of organization, the operating agreement and this chapter."

N.Y. LTD. LIAB. CO. 604(b).

Here, if we ignore Simao's membership interests in the Limited Liability Company Respondents, there would be no member objection to the substitution of AHFC as a member, as was the case in *Olmstead*, *In re Albright*, and *In re Modanlo*. *See Olmstead*, 44 So. 3d at 83; *In re Albright*, 291 B.R. at 540; *In re Modanlo*, 412 B.R. at 727. That is, if Simao's direct membership interests in the Limited Liability Company Respondents and his 100% ownership interest in River North I, Inc. are ignored, there are no other members to object to the substitution of AHFC. In each of the above-referenced cases, the courts held that substitution of the member was appropriate, rather than a mere assignment of the membership interest. *See id.*

As such, the Court should Order that AHFC is substituted as a member of each of the non-DealMaker limited liability company Respondents, with all rights that Simao had with respect to the same, including the right to liquidate assets and to declare distributions.

24

## POINT II

### AHFC IS NOT LIMITED TO THE COLLECTION OF 10% OF MONEYS RECEIVED BY SIMAO FROM THE RESPONDENTS

Respondents' seventh point of law asserts that Civil Practice Law and Rules sections 5205(d)(2) and 5231(b) prevent AHFC from collecting in excess of ten percent of profits, including distributions and dividends, allocated to Simao (*see* Exhibit 2 at ¶ 242). However, as set forth below, the limitations of Civil Practice Law and Rules section 5205(d)(2) and 5231(b) simply do not apply in this case.

Civil Practice Law and Rules section 5205(d)(2) provides that "ninety per cent of the earnings of the judgment debtor for his personal services rendered" are exempt from application to the satisfaction of a judgment. N.Y. C.P.L.R. § 5205(d)(2) (emphasis added). Simao does not receive any "earnings for personal services rendered," as he has admitted that he does not receive any wages, cash benefits or any other form of compensation for his services to the Respondents (*see* Exhibit 5, at 8).

Profits, including bonuses, distributions and dividends, are earnings from business investments, *not* earnings for Simao's personal services, and therefore are not subject to the personal property exemption contained in Civil Practice Law and Rules section 5205(d)(2). *See In re Wyman*, 76 A.D. 292, 295 (3d Dep't 1902) (holding that "proceeds of a business carried on by" the judgment debtor are not subject to the personal property exemption); *Prince v Brett*, 21 A.D. 190, 191 (2d Dep't 1897) (same); *Mulford v. Gibbs*, 9 A.D. 490, 491-492 (holding that the exemption does not apply to a merchant who takes part in his own business, where the investment of capital and employment of labor

25

predominate); *Jones v. Palermo*, 105 Misc. 2d 405, 408 (Sup. Ct N.Y. Cty 1980) (holding that the interest of a judgment debtor in a partnership is not subject to exemption); *1101 Park Ave. Corp. v. Cornell*, 133 Misc. 397, (City Ct N.Y. Cty 1928); *Schafer v. Tyroler*, 94 Misc. 127, 128-129 (City Ct N.Y. Cty 1916); *cf. Bernstein v. Comm'r of Taxation & Fin.*, 200 A.D.2d 810, 811 (3d Dep't 1994) (holding that the tax benefit for "New York personal service income" . . . was intended to cover compensation received for personal services actually rendered and not distributions of corporate profits").

Nor does Civil Practice Law and Rules section 5231(b) apply in this case. That section simply provides the mechanism by which a judgment creditor may execute against a judgment debtor's earnings. Petitioner is not seeking to execute against Simao's "earnings;" rather, AHFC is seeking the delivery and sale of personal property and to charge Simao's interests in the limited liability company Respondents.

Based on the distinguishing features of this case, the limitations contained in Civil Practice Law and Rules sections 5205(d)(2) and 5231(b) do not apply. Respondents' seventh point of law must be dismissed.

## POINT III

### THE ACTION AGAINST AMERICAN HONDA MOTOR CO., INC. IS NOT GROUNDS TO STAY EXECUTION OF THE JUDGMENT

Respondents fourteenth point of law seeks to invoke this Court's equity jurisdiction to restrain AHFC's execution of the Judgment pending a determination of certain claims against American Honda Motor Co., Inc. ("Honda Motor") under the Automobile Dealers' Day in Court Act (ADDCA) (*see* Exhibit 2, ¶¶ 249-251). However,

26

as Respondents accurately state, any claim against AHFC in relation to the ADDCA was dismissed based upon this Court's determination (upheld on appeal) that AHFC is <u>not</u> an automobile manufacturer and had not acted in bad faith. *See* Modesti Aff. Ex. C at 24-25; Modesti Aff. Ex. D. Respondents seek here to invoke the protections of the ADDCA notwithstanding that such claim has already been adjudicated in AHFC's favor.

"CPLR 5240 should be applied with caution" where it "is justified in order to correct the substantial departures from statutory mandates and to preserve the due process rights of the judgment debtor." *Reynders v. Reynders*, 155 A.D.2d 987, 548 N.Y.S.2d 130, 131 (4th Dep't 1989). "The purpose of CPLR 5240 is to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts." *Paz v. Long Island R.R.*, 241 A.D.2d 486, 487 (2d Dep't 1997). "The exercise of the discretionary power granted by CPLR 5240 requires harmonizing the judgment debtor's interest in avoiding irreparable . . . harm . . . with the legitimate interest of a creditor in securing payment of a valid debt." *Moskin v. Midland Bank & Trust Co.*, 96 Misc. 2d 600, 602 (Sup. Ct. 19778).

Civil Practice Law and Rules section 5240 has been used to permit setoff against the judgment sought to be enforced (*see Paz*, 241 A.D.2d at 487 (where judgment debtor held liens against judgment creditor, court property permitted the judgment debtor to assert those liens against the judgment)); to vacate an execution and levy against funds that were the subject of a surety's lien (*see O'Brien v. Fago*, 54 Misc. 2d 203, 205-206 (Sup. Ct. 1967) (where the court held that the judgment debtor had not right to funds that were subject of surety's lien)); to stay execution against the judgment debtor's sole

27

source of livelihood (*see Moskin*, 96 Misc. 2d at 602 (where the court stayed execution against judgment debtor's seat on the NYSE)); and to stay execution of a house resided in by two adults and four teenage children (*see Holmes v. W.T. Grant, Inc.*, 71 Misc. 2d 486 (Sup Ct. 1972). None of these situations is applicable here.

Here, Respondents acknowledge that they have no claim against AHFC for violation of the ADDCA (*see* Exhibit 2, ¶ 250). All they have asserted is a claim against Honda <u>Motor</u> (*see* Exhibit 2, ¶¶ 249-251). While Honda <u>Motor</u> is AHFC's parent company, that fact does not impute AHFC with liability for any judgment Respondents may obtain against Honda Motor.

AHFC acknowledges that a parent corporation may be held liable for the torts of its subsidiary where "it can be shown that the parent exercised complete dominion and control over the subsidiary." *Potash v. Port Auth.*, 279 A.D.2d 562, 562 (2d Dep't 2001). However, what the Respondents seek to do is the reverse—Respondents seek to hold AHFC, the subsidiary, liable for the alleged torts of Honda Motor, its parent. AHFC is not a party to the action commenced against Honda Motor, and it is not even alleged in that action that AHFC exercised dominion or control over Honda Motor such that AHFC should be held liable for Honda Motor's alleged torts. *See* Modesti Aff. Ex. E.

AHFC also is not seeking to execute against funds that are the subject of a third party's lien, is not seeking to execute against Simao's sole source of livelihood, and is not seeking to cause Simao familial harm by executing against his home. Simao admits that he does not receive any wages or receive any cash benefits from any of the entity Respondents (*see* Exhibit 5, at 8). AHFC is only seeking to obtain satisfaction of the

28

Judgment plus interest from profits and distributions declared by the limited liability company Respondents and the sale of Simao's interests in the corporate Respondents. Any harm resulting from these actions is substantially outweighed by AHFC's right to be paid what two courts have now determined AHFC is owed.

The Judgment resulted from Simao's operation of the Dealerships out of trust, meaning that Simao's companies failed to hold proceeds of the sale of AHFC's collateral in trust and to pay over those sale proceeds to AHFC as required by the floor plan financing agreements. *See* Modesti Aff. Ex. A, ¶ 10, 11. AHFC declared and gave notice to Simao that the entities were out of trust in April of 2009, more than five years ago. *See* Modesti Aff. Ex. A, ¶ 11. What Respondents now seek to do is make AHFC wait to enforce the Judgment, while Simao continues to shield his funds through loans to companies he owns, so as to line his pockets with distributions from his various entities in repayment of those loans.

## POINT IV

### PETITIONER IS ENTITLED TO AN AWARD OF COSTS

Federal Rules of Civil Procedure 54(d) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. FED. R. CIV. P. 54(d).

Civil Practice Law and Rules similarly provides for an award of costs to the prevailing party. N.Y. C.P.L.R. § 8101. Civil Practice Law and Rules section 5525(b) only excludes an award of costs where the respondent "did not dispute the judgment debtor's interest or right to possession." N.Y. C.P.L.R. § 5225(b).

29

As Respondents have disputed AHFC's right to the relief sought in this special proceeding, AHFC is entitled to an award of costs.

## CONCLUSION

By reason of the foregoing, AHFC respectfully requests an Order (1) granting its motion, pursuant to Federal Rules of Civil Procedure 56, for summary judgment; (2) directing the entity Respondents to pay over to AHFC any money in which Simao has an interest, or so much of it as is sufficient to satisfy AHFC's judgment, including any debt or obligation due and owing from the entity Respondents to Simao; and (3) if the amount to be so paid is insufficient to satisfy AHFC's judgment plus interest, (i) directing Respondents to deliver to a designated U.S. Marshall any other personal property in which Simao has an interest, including all documents evidencing Simao's ownership interest in the corporation Respondents, or so much of it as is sufficient to satisfy AHFC's judgment plus interest, to be sold by such U.S. Marshall to satisfy the Judgment plus interest; and (ii) charging Simao's interest in the limited liability company Respondents with payment of the unsatisfied amount of the Judgment plus interest.

AHFC also requests that the Court appoint a Receiver authorized (1) to review Respondents' books and records within ten (10) days from the date of the order approving said appointment, and every thirty (30) days thereafter; (2) to accept Simao's membership interests in the limited liability company Respondents; (3) to receive, on an ongoing and continuing basis until the Judgment with interest is paid in full, all profits of the entity Respondents, and all distributions, dividends and bonuses declared by the entity Respondents and/or the Receiver, to which Simao would otherwise be entitled.

30

AHFC also respectfully requests such other and further relief which the Court deems just and proper, including the costs and disbursements of this action, in accordance with Federal Rules of Civil Procedure 54(d) and Civil Practice Law and Rules §§ 8101, 5225(b) and 5227.

Dated: July 11, 2014

**MENTER, RUDIN & TRIVELPIECE, P.C.**
*Attorneys for Petitioner American Honda Finance Corporation*

By: _____

Julian B. Modesti, of Counsel
Bar Roll No.: 507674
Teresa M. Bennett, of Counsel
Bar Roll No.: 515025
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1439
Telephone: (315) 474-7541


**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
*Attorneys for Petitioner American Honda Finance Corporation*
Louis A. Modugno, of Counsel
Bar Roll No.: 509152
40 West Ridgewood Avenue
Ridgewood, New Jersey 07450
Telephone: (973) 425-8660