UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AM. HONDA FIN. CORP., a California Corp.,

               Petitioner,

                                     7:13-CV-0260
v.                                       (GTS/ATB)

ROUTE 57 DEV., LLC, *et. al.*,

               Respondents.
_____

APPEARANCES:                         OF COUNSEL:

MENTER, RUDIN & TRIVELPIECE, P.C.     JULIAN B. MODESTI, ESQ.
  Counsel for Petitioner              TERESA M. BENNETT, ESQ.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498

BOND, SCHOENECK & KING, PLLC       BRIAN J. BUTLER, ESQ.
  Counsel for Respondents
One Lincoln Center
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this action to enforce a judgment filed by American Honda

Finance Corporation ("Petitioner") against Philip J. Simao and thirty-four entities

("Respondents"),[1] is Petitioner's motion for summary judgment. (Dkt. No. 45.) For the reasons

set forth below, Petitioner's motion is granted.

---

[1]      These thirty-four entities are as follows: Route 57 Development, LLC, Prime, L.L.C., Toped Development LLC, Warners Road Development, LLC, 81 Front Street Development, LLC, Arbel LLC, Auburn Route 5 Development LLC, Automobile Franchise Acquistions, LLC, B&J Auto Sales, Inc., Collins Landing Development Corp., DealMaker of Potsdam, LLC, Dealmaker Auto Group, L.L.C., Dealmaker Dodge, LLC, Dealmaker Ford of Clay, LLC, Dealmaker Ford, Inc, Dealmaker Honda of Potsdam, LLC, Dealmaker Leasing, L.L.C., Dealmaker Management, LLC, Dealmaker Nissan, LLC, Dealmaker of Ogdensburg, L.L.C., Dealmaker, L.L.C., Franchise Acquisitions, LLC, Ives Hill Country Club, Inc., Kimbrook Route 31 Development LLC, Kimbrook Route 31 L.L.C., Liberty Sackets Harbor LLC, Lobut Development, LLC, Onondaga Development, LLC, River North I, Inc., River North, LLC, SIM-SAC Development Corp., Thirty One Development LLC, Toped Management Services, Inc., and V.M. Paolozzi Imports, Inc. (Dkt. No. 1.)

# I. RELEVANT BACKGROUND

## A. Petitioner's Claims

Generally, Petitioner's Verified Petition alleges that, between approximately March 29, 2012 (when a Judgment was entered in this Court in favor of Petitioner against Respondent Simao in the amount of $3,622,715.03), and March 6, 2013 (when Petitioner signed its Verified Petition), Respondent Simao has paid less than $5,000.00 of the Judgment against him despite owning shares in, and receiving money from, the corporate Respondents.  (*See generally* Dkt. No. 1 [Pet.'s Petition].)

Generally, based on these factual allegations, Petitioner's Verified Petition asserts the following claims against Respondents pursuant to Fed. R. Civ. P. 69(a), New York Civil Practice Law and Rules ("CPLR") §§ 5018(b), 5225(b), 5227, and 5228(a), and New York Limited Liability Company Law §§ 603(a)(3) and 607(a): (1) twenty-three claims for the assignments, by the corporate Respondents to Petitioner, of so much of the money or other personal property in which Respondent Simao has an interest as is sufficient to satisfy the Judgment in favor of Petitioner and against Simao; and (2) a claim for the appointment of a receiver to review the books and records of Respondents, accept Simao's memberships interests in Respondents, and receive all of the profits to which Simao would otherwise be entitled on an ongoing and continuing basis until the Judgment is satisfied.  (*Id.*)

Familiarity with the factual allegations supporting these claims in Petitioner's Verified Petition is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

**B.     Undisputed Material Facts**

Unless otherwise noted, the following facts have been asserted and supported by Petitioner and either expressly admitted or denied without a supporting record citation by Respondents.  (*Compare* Dkt. No. 45, Attach. 1 [Pet.'s Rule 7.1 Statement] *with* Dkt. No. 52, Attach. 1 [Resps.' Rule 7.1 Response].)

<u>The Judgment</u>

1.     American Honda Finance Corporation ("AHFC") is a California corporation authorized to conduct business within the State of New York as a Foreign Business Corporation.

2.     On or about February 9, 2010, Petitioner commenced an action against V.M. Paolozzi Imports, Inc., doing business as DealMaker at Drum Honda, a/k/a DealMaker Honda of Watertown, DealMaker of Potsdam, LLC, doing business as DealMaker Honda of Potsdam, Philip J. Simao ("Simao") and Mark V. Picarazzi ("Picarazzi").

3.     On or about March 29, 2012, a judgment was entered in the United States District Court, Northern District of New York, in favor of AHFC, and against Simao, in the aggregate principal, total amount of $3,622,715.03 (the "Judgment").

4.     The Judgment consists of a judgment in the principal amount of $2,120,493.09 against V.M. Paolozzi Imports, Inc., d/b/a DealMaker at Drum Honda a/k/a DealMaker Honda of Watertown, Picarazzi and Simao, jointly and severally.

5.     The Judgment further consists of a judgment in the principal amount of $1,502,221.94 against DealMaker of Potsdam, LLC d/b/a DealMaker Honda of Potsdam and Simao, jointly and severally.

6. AHFC also obtained a judgment against V.M. Paolozzi Imports, Inc. d/b/a DealMaker at Drum Honda a/k/a DealMaker Honda of Watertown in the principal amount of $203,189.60.

7. As of the date of Petitioner's motion (July 11, 2014), AHFC has received payment in the amount of only $690.38.

<u>Route 57 Development, LLC</u>

8. Respondent Route 57 Development, LLC ("Route 57") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, New York.

9. 19441 Collins Landing W., Alexandria Bay, New York is owned by Simao.

10. Route 57 is owned by Simao (99%) and River North, LLC (1%).

11. Simao is the Managing Member of Route 57.

12. Route 57 owns vacant commercial property at Collins Landing West, Alexandria Bay, NY, County Route 202, Watertown, NY, 103 State Street, Carthage, NY, VL College Heights, Watertown, NY and 440 State Street, Watertown, NY, as well as other real property located at 7640 State Highway 68, Ogdensburg, NY, Salmon Run Mall Road, Watertown, NY, 426 State Street, Watertown, NY and 430 State Street, Watertown, NY.

13. Route 57 leases one or more of the above-referenced properties to third parties, who pay Route 57 rent.

14. Simao receives money from Route 57 in the form of distributions.

15. In 2010, Simao received distributions from Route 57 in the amount of $237,775;

River North, LLC received no distribution.[2]

16.     In 2011, Simao received distributions from Route 57 in the amount of $66,371;

River North, LLC received no distributions.[3]

17.     In 2012, Route 57 received sale proceeds in the amount of $1,950,000 from the

sale of commercial real property.[4]

---

[2]     Although Respondents objects that Petitioner's Exhibits 6 and 7 may not be relied on by Petitioner because they are inadmissible, Fed. R. Civ. P. 56 requires merely that the material contained in the exhibits "*can*[] *be* presented in a form that *would be* admissible in evidence [at trial]." Fed. R. Civ. P. 56(c)(2) (emphasis added). Respondents have made no showing that the material contained in the exhibits cannot be so presented at trial. (Dkt. No. 52, Attach. 1, at ¶ 15 [Resps.' Rule 7.1 Response].) The Court notes that Respondents do not, in their Rule 7.1 Response, deny the obvious fact that the exhibits were produced by them during discovery. (*Id*; Dkt. No. 45, Attach. 5-19 [bearing Respondent's Bates-stamp numbers]; Dkt. No. 47 [bearing Respondent's Bates-stamp numbers]; Dkt. No. 45, Attach. 20, at ¶¶ 12, 19, 20 [Modesti Affid., referencing Petitioner's discovery demands and Respondents' response thereto]; *cf.* Dkt. No. 66, at ¶ 10 [Modesti Reply Affid., stating fact of production by Respondent].) Indeed, while making their argument of inadmissibility, Respondents acknowledge that they produced the exhibits in response to Petitioner's discovery requests. (Dkt. No. 52, at 10-11 [attaching pages "3" and "4" of Resps.' Opp'n Mem. of Law].) Moreover, after making their argument of inadmissibility, Respondents expressly admitted their production of the exhibits in discovery, and the fact that the exhibits were "true and accurate" copies of documents "made" and/or "kept" in "the regular course of . . . business" or "the course of . . . regularly conducted . . . business." (Dkt. No. 66, at ¶ 12 [Modesti Reply Affid.]; Dkt. No. 66, Attach. 1, ¶¶ 1-148 [Ex. A to Modesti Reply Affid.]; *cf.* Dkt. No. 66, at ¶ 13 [Modesti Reply Affid.]; Dkt. No. 66, Attach. 2 [Ex. B to Modesti Reply Affid.].) For all these reasons, the Court is not persuaded that Petitioner cannot present the exhibits in a form that would be admissible in evidence at trial.

The Court notes also that Respondents' attempt, in their Rule 7.1 Response, to correct the "misleading" nature of what they perceive to be the *implication* of Petitioner's factual assertion is unavailing. *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure is based on the *assertion* of facts and their disputation, not the *implication* of facts and their disputation). To the extent that Respondents desired to set forth any additional material facts that they contend are in dispute, they were required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs (which they did not). In any event, even if the Court were to consider the additional material facts in question (which it does not), the Court would not find them to be particularly material to the legal issues presented by Petitioner's motion. (Dkt. No. 52, Attach. 1.)

[3]     The Court rejects the objection and attempt to clarify set forth in Paragraph 16 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[4]     The Court rejects the objection and attempt to clarify set forth in Paragraph 17 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

18.     In 2012, Simao received distributions from Route 57 in the amount of $1,906,911; River North, LLC received no distributions.[5]

19.     The affairs of Route 57 are governed by an Operating Agreement.[6]

## Prime, L.L.C.

20.     Respondent Prime, L.L.C. ("Prime") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

21.     Prime is owned by Simao (99%) and River North, LLC (1%).

22.     Simao is the Managing Member of Prime.

23.     Prime is in possession or custody of personal property and money, as well as real property consisting of the following: one or more country clubs located at 19953 county Route 65, Watertown, NY, 465 Flower Avenue, Watertown, NY, and Weldon Drive, Watertown, NY; commercial real property located at 48 Maple Street, Potsdam, NY, 42 Maple Street, Potsdam, NY, 4 Clarkson Road, Potsdam, NY, 1833 State Street, Watertown, NY, 1068 Arsenal Street, Watertown, NY, and 8775 Dell Center Drive, Clay, NY; and vacant real property located at 21306 NYS Route 12F, Watertown, NY, VL-2 Ives Street, Watertown, NY, 3883 Rome Road, Pulaski, NY, and 3889 State Route 31, Clay, NY.

24.     Prime leases one or more of the above-referenced properties to third parties, who pay Prime rent.

---

[5]     The Court rejects the objection and attempt to clarify set forth in Paragraph 18 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[6]     The Court rejects the objection set forth in Paragraph 19 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

25.     Simao receives money from Prime in the form of distributions.

26.     In 2010, Prime received sale proceeds in the amount of $1,350,000 from the sale of "490 Arsena," as well as sale proceeds in the amount of $3,000,000 from the sale of "DM Ford CI."[7]

27.     In 2010, Simao received distributions from Prime in the amount of $1,080,952; River North, LLC received no distribution.[8]

28.     In 2011, Prime received sale proceeds in the amount of $1,322,000 from the sale of "Apts."[9]

29.     In 2011, Simao received distributions from Prime in the amount of $408,558; River North, LLC received no distributions.[10]

30.     In 2012, Simao received distributions from Prime in the amount of $3,056; River North, LLC received no distributions.[11]

31.     The affairs of Prime are governed by an Operating Agreement.[12]

---

[7]     The Court rejects the objection and attempt to clarify set forth in Paragraph 26 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[8]     The Court rejects the objection and attempt to clarify set forth in Paragraph 27 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[9]     The Court rejects the objection and attempt to clarify set forth in Paragraph 28 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[10]     The Court rejects the objection and attempt to clarify set forth in Paragraph 29 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[11]     The Court rejects the objection set forth in Paragraph 30 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[12]     The Court rejects the objection set forth in Paragraph 31 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

<u>Toped Development, LLC</u>

32.     Respondent Toped Development, LLC ("Toped") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, New York.

33.     Toped is owned by Simao (99%) and River North, LLC (1%).\

34.     Simao is the Managing Member of Toped.

35.     Toped is in possession or custody of personal property and money, as well as real property consisting of the following: vacant land located on NYS Route 12F, Watertown, NY and NYS Route 3, Watertown, NY; other vacant real property located at VL Faichney Drive, Watertown, NY, 1101 Park Street, Ogdensburg, NY, 5775 Pine Grove Road W., Cicero, NY, 5769 Pine Grove Road W., Cicero, NY, 5751 Pine Grove Road W., Cicero, NY, 5757 Pine Grove Road W., Cicero, NY, 5755 Pine Grove Road W., Cicero, NY, 5775 Pine Grove Road W., Cicero, NY and 5741 Pine Grove Road W., Cicero, NY; and other real property located at 21290/310 County Route 202, Watertown, NY and 2254 Downer Street, Van Buren, NY.

36.     Toped leases one or more of the above-referenced properties to third parties, who pay Toped rent.

37.     Simao receives money from Toped in the form of distributions.

38.     In 2010, Simao received distributions from Toped in the amount of $578,063; River North, LLC received no distribution.[13]

39.     In 2011, Simao received distributions from Toped in the amount of $224,904;

---

[13]     The Court rejects the objection and attempt to clarify set forth in Paragraph 38 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

River North, LLC received no distributions.[14]

40.     In 2012, Simao received distributions from Toped in the amount of $114,615; River North, LLC received no distributions.[15]

41.     The affairs of Toped are governed by an Operating Agreement.[16]

### Warners Road Development, LLC

42.     Respondent Warners Road Development, LLC ("Warners") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

43.     Warners is owned by Simao (99%) and River North, LLC (1%).

44.     Simao is the Managing Member of Warners.

45.     Warners is in possession or custody of real property located at 3721 Brewerton Road, Clay/Salina, NY (Tax Parcel Nos. 117.-11-25.0 and 045.-05-01.0).

46.     Warners leases one or more of the above-referenced properties to third parties, who pay Warners rent.

47.     Simao receives money from Warners in the form of distributions.

48.     In 2011, Simao received distributions from Warners in the amount of $1,259; River North, LLC received no distributions.[17]

---

[14]     The Court rejects the objection and attempt to clarify set forth in Paragraph 39 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[15]     The Court rejects the objection and attempt to clarify set forth in Paragraph 40 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[16]     The Court rejects the objection set forth in Paragraph 41 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[17]     The Court rejects the objection and attempt to clarify set forth in Paragraph 48 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

49.     In 2012, Simao received distributions from Warners in the amount of $1,875; River North, LLC received no distributions.[18]

50.     The affairs of Warners are governed by an Operating Agreement.[19]

Onondaga Development, LLC

51.     Respondent Onondaga Development, LLC ("Onondaga") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

52.     Onondaga is owned by Simao (99%) and River North, LLC (1%).

53.     Simao is the Managing Member of Onondaga.

54.     Onondaga is in possession or custody of personal property that includes money and real property (including vacant land) located at 559 Factory Street, Watertown, NY, 901 Arsenal Street, Watertown, NY, 909 Arsenal Street, Watertown, NY, 21291 and 21303 NYS Route 12, Watertown, NY, 332 State Street, Watertown, NY and Rome Road, Pulaski, NY.

55.     Onondaga leases one or more of the above-referenced properties to third parties, who pay Onondaga rent.

56.     Simao receives money from Onondaga in the form of distributions.

57.     In 2011, Simao received distributions from Onondaga in the amount of $76,123; River North, LLC received no distributions.

---

[18]     The Court rejects the objection and attempt to clarify set forth in Paragraph 49 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[19]     The Court rejects the objection set forth in Paragraph 50 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

58.     In 2012, Onondaga received sale proceeds in the amount of $625,000 from the sale of "Rt 11 Honda."[20]

59.     In 2012, Simao received distributions from Onondaga in the amount of $565,673; River North, LLC received no distributions.[21]

60.     The affairs of Onondaga are governed by an Operating Agreement.[22]

### 81 Front Street Development, LLC

61.     Respondent 81 Front Street Development, LLC ("81 Front Street") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

62.     81 Front Street is owned by Simao (99%) and River North, LLC (1%).

63.     Simao is the Managing Member of 81 Front Street.

64.     81 Front Street leases certain properties and/or billboards to third parties, who pay 81 Front Street rent.[23]

65.     Simao receives money from 81 Front Street in the form of distributions.

66.     In 2010, Simao received distributions from 81 Front Street in the amount of $104,845; River North, LLC received no distributions.[24]

---

[20]     The Court rejects the objection and attempt to clarify set forth in Paragraph 58 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[21]     The Court rejects the objection and attempt to clarify set forth in Paragraph 59 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[22]     The Court rejects the objection set forth in Paragraph 60 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[23]     The Court rejects the objection set forth in Paragraph 64 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[24]     The Court rejects the objection and attempt to clarify set forth in Paragraph 66 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

67.     In 2011, Simao received distributions from 81 Front Street in the amount of $107,207; River North, LLC received no distributions.[25]

68.     In 2012, 81 Front Street received sale proceeds in the amount of $1,100,000 from the sale of "Shorty's D."[26]

69.     In 2012, Simao received distributions from 81 Front Street in the amount of $481,100; River North, LLC received no distributions.[27]

70.     The affairs of 81 Front Street are governed by an Operating Agreement.[28]

<u>Arbel LLC</u>

71.     Respondent Arbel LLC ("Arbel") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

72.     Arbel is owned by Simao (99%) and River North, LLC (1%).

73.     Simao is the Managing Member of Arbel.

74.     The affairs of Arbel are governed by an Operating Agreement.[29]

---

[25]     The Court rejects the objection and attempt to clarify set forth in Paragraph 67 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[26]     The Court rejects the objection and attempt to clarify set forth in Paragraph 68 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[27]     The Court rejects the objection and attempt to clarify set forth in Paragraph 69 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[28]     The Court rejects the objection set forth in Paragraph 70 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[29]     The Court rejects the objection set forth in Paragraph 74 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

<u>Auburn Route 5 Development LLC</u>

75.    Respondent Auburn Route 5 Development LLC ("Route 5") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

76.    Route 5 is owned by Simao (99%) and River North, LLC (1%).

77.    Simao is the Managing Member of Route 5.

78.    The affairs of Route 5 are governed by an Operating Agreement.[30]

79.    Respondent Automobile Franchise Acquisitions, LLC ("Acquisitions") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

80.    Acquisitions is owned by Simao (99%) and River North, LLC (1%).

81.    Simao is the Managing Member of Acquisitions.

82.    The affairs of Acquisitions are governed by an Operating Agreement.[31]

<u>B&J Auto Sales, Inc.</u>

83.    Respondent B&J Auto Sales, Inc. ("B&J") is a corporation organized and existing under the laws of the State of New York, with an office for the transaction of business at 137 Main Avenue, Watertown, NY.

84.    137 Main Avenue, Watertown, NY is owned by DealMaker Dodge LLC.

85.    Simao is the Managing Shareholder of B&J.

86.    B&J is owned by Simao (112.5 common shares) and Picarazzi (37.5 common shares).

---

[30]    The Court rejects the objection set forth in Paragraph 78 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[31]    The Court rejects the objection set forth in Paragraph 82 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

87. A version of the 2012 Balance Sheet of B&J (i.e., one with the words "DRAFT–FINAL ADJUSTMENTS NOT YET" marked across the middle of each page) shows a "Shareholder Loan - PJS - Other" in the amount of $1,263,908.85.

Collins Landing Development Corp.

88. Respondent Collins Landing Development Corp. ("Collins Landing") is a corporation organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

89. Collins Landing is owned by Simao (100%).

90. Collins Landing is in possession or custody of real property located at 102 Champion Street, Carthage, NY.[32]

91. The 2012 Balance Sheet of Collins Landing shows a "Long Term Liabilit[y] . . . Due to PJS - Other" in the amount of $269,274.93, which did not exist as in 2010 or 2011.[33]

The Dealmaker Respondents

92. Respondents Dealmaker Dodge, LLC, Dealmaker Nissan, LLC, Dealmaker Ford of Clay, LLC, Dealmaker, L.L.C., Dealmaker Auto Group, L.L.C., Dealmaker Leasing, L.L.C., Dealmaker of Ogdensburg, L.L.C., Dealmaker Honda of Potsdam, LLC and Dealmaker of Potsdam, LLC (collectively "DealMaker LLCs") are limited liability companies organized and existing under the laws of the State of New York, with an office for the transaction of business at 137 Main Avenue, Watertown, NY.

---

[32] The Court rejects the objection set forth in Paragraph 90 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[33] The Court rejects the objection set forth in Paragraph 91 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

93.     DealMaker Ford Inc. is a corporation organized and existing under the laws of the State of New York, with an office for the transaction of business at 137 Main Avenue, Watertown, NY.

94.     V.M. Paolozzi Imports, Inc. (DealMaker Ford Inc. and V.M. Paolozzi Imports, Inc. are collectively hereinafter referred to as the "DealMaker Corps.") is a corporation organized and existing under the laws of the State of New York with an office for the transaction of business at 137 Main Avenue, Watertown, NY.

95.     The DealMaker LLCs are owned by Simao (75%) and Picarazzi (25%).

96.     The DealMaker Corps, are owned by Simao (975 common shares; 5,655 preferred shares) and Picarazzi (325 common shares; 1,885 preferred shares).

97.     V.M. Paolozzi Imports, Inc., DealMaker of Potsdam, LLC (d/b/a DealMaker Honda of Potsdam), and Picarazzi are also judgment debtors.

98.     Simao is the Managing Member of the DealMaker LLCs.

99.     Simao is the Managing Shareholder of the DealMaker Corps.

100.    DealMaker Dodge LLC is in possession of or custody of real property located at 137 Main Avenue, Watertown, NY.

101.    As of March 6, 2013, Dealmaker Dodge LLC had recently obtained a new tenant, Schwerzmann & Wise P.C. at the 137 Main Avenue address.

102.    Simao receives money from one or more of the DealMaker LLCs and/or the DealMaker Corps, in the form of distributions.

103.	The affairs of the DealMaker LLCs are governed by Operating Agreements and/or Amended Operating Agreements.[34]

Franchise Acquisitions, LLC

104.	Respondent Franchise Acquisitions, LLC ("Franchise Acquisitions") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

105.	Franchise Acquisitions is owned by Simao (99%) and River North, LLC (1%).

106.	Simao is the Managing Member of Franchise Acquisitions.

107.	The affairs of Franchise Acquisitions are governed by an Operating Agreement.[35]

Ives Hill Country Club, Inc.

108.	Respondent Ives Hill Country Club, Inc. ("Ives Hill") is a corporation organized and existing under the laws of the State of New York.

109.	Ives Hill is owned by Simao (100%).

110.	The 2012 Balance Sheet of Ives Hill shows a "Long Term Liabilit[y] . . . Note Payable -- Shareholder - Other" in the amount of $1,202,164.04, which amount increased from $863,784.20 in 2010.[36]

Kimbrook Route 31 Development LLC

111.	Respondent Kimbrook Route 31 Development LLC ("Kimbrook Dev.") is a limited liability company organized and existing under the laws of the State of New York.

---

[34]	The Court rejects the objection set forth in Paragraph 103 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[35]	The Court rejects the objection set forth in Paragraph 107 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[36]	The Court rejects the objection set forth in Paragraph 110 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

112. Kimbrook Dev. is owned by Simao (99%) and River North, LLC (1%).

113. Simao is the Managing Member of Kimbrook Dev.

114. Kimbrook Dev. Is in possession or custody of money and other personal and real property, including real property located at 3566 State Route 31, Clay, NY, 3584 State Route 31, Clay, NY, 3610 State Route 31, Clay, NY, and other real property located on State Route 31 in Clay, NY.

115. Kimbrook Dev. leases the above-referenced properties to third parties, who pay Kimbrook Dev. rent.

116. Simao receives money from Kimbrook Dev. in the form of distributions.

117. In 2012, Simao received distributions from Kimbrook Dev. in the amount of $25,525; River North, LLC received no distributions.[37]

118. The affairs of Kimbrook Dev. are governed by an Operating Agreement.[38]

### Kimbrook Route 31 L.L.C.

119. Respondent Kimbrook Route 31, L.L.C. ("Kimbrook") is a limited liability company organized and existing under the laws of the State of New York.

120. Kimbrook is owned by Simao (99%) and River North, LLC (1%).

121. Simao is the Managing Member of Kimbrook.

122. Kimbrook is in possession or custody of money and other personal and real property, including real property located at 3588 State Route 31, Clay, NY, 3594 State Route 31, Clay, NY, and on Oswego Road in Clay, NY.

---

[37] The Court rejects the objection and attempt to clarify set forth in Paragraph 117 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[38] The Court rejects the objection set forth in Paragraph 118 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

123. Kimbrook leases the above-referenced properties to third parties, who pay Kimbrook rent.

124. In 2010, Simao received distributions from Kimbrook in the amount of $416,601; River North, LLC received no distributions.[39]

125. In 2011, Simao received distributions from Kimbrook in the amount of $193,094; River North, LLC received no distributions.[40]

126. The affairs of Kimbrook are governed by an Operating Agreement.[41]

Liberty Sackets Harbor LLC

127. Respondent Liberty Sackets Harbor LLC ("Liberty") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

128. Liberty is owned by Simao (99%) and River North, LLC (1%).

129. Simao is the Managing Member of Liberty.

130. Liberty is in possession or custody of money and other personal and real property, including real property located at 207 General Smith Drive, Sackets Harbor, NY.

131. Liberty leases the above-referenced property to third parties, who pay Liberty rent.

---

[39] The Court rejects the objection and attempt to clarify set forth in Paragraph 124 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[40] The Court rejects the objection and attempt to clarify set forth in Paragraph 125 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[41] The Court rejects the objection set forth in Paragraph 125 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

132.    The affairs of Liberty are governed by an Operating Agreement.[42]

### Lobut Development, LLC

133.    Respondent Lobut Development, LLC ("Lobut") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

134.    Lobut is owned by Simao (99%) and River North, LLC (1%).

135.    Simao is the Managing Member of Lobut.

136.    Lobut is in possession or custody of money and other personal and real property, including real property located at 160 Main Avenue, Watertown, NY, 164 Main Avenue, Watertown, NY, 401 Mill Street, Watertown, NY, 160 Rear Main Avenue, Watertown, NY, 111 Broadway E, Fulton, NY, 109 Broadway E, Fulton, NY and 215 First Street S, Fulton, NY.

137.    Lobut leases one or more of the above-referenced properties to third parties, who pay Lobut rent.

138.    In 2010, Simao received distributions from Lobut in the amount of $7,550; River North, LLC received no distributions.[43]

139.    In 2011, Simao received distributions from Lobut in the amount of $7,742; River North, LLC received no distributions.[44]

---

[42]    The Court rejects the objection set forth in Paragraph 132 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[43]    The Court rejects the objection and attempt to clarify set forth in Paragraph 138 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[44]    The Court rejects the objection and attempt to clarify set forth in Paragraph 139 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

140.    In 2012, Simao received distributions from Lobut in the amount of $32,682; River North, LLC received no distributions.[45]

141.    The affairs of Lobut are governed by an Operating Agreement.[46]

## River North, LLC

142.    Respondent River North, LLC ("River North") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

143.    River North is owned by Simao (99%) and River North I, Inc.

144.    Simao is the Managing Member of River North.

145.    In 2011, Simao received distributions from River North in the amount of $2,636; River North I, Inc. received no distributions.[47]

146.    In 2012, Simao received distributions from River North in the amount of $13,811; River North I, Inc. received no distributions.[48]

147.    The affairs of River North are governed by an Operating Agreement.[49]

---

[45]    The Court rejects the objection and attempt to clarify set forth in Paragraph 140 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[46]    The Court rejects the objection set forth in Paragraph 141 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[47]    The Court rejects the objection and attempt to clarify set forth in Paragraph 145 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[48]    The Court rejects the objection and attempt to clarify set forth in Paragraph 146 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[49]    The Court rejects the objection set forth in Paragraph 147 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

<u>River North I, Inc.</u>

148.    Respondent River North I, Inc. ("River North I") is a corporation organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

149.    River North I is owned by Simao (100%).

<u>Sim-Sac Development Corp.</u>

150.    Respondent SIM-SAC Development Corp. ("SIM-SAC") is a corporation organized and existing under the laws of the State of New York, with an office for the transaction of business at 436 Lionel Avenue, Solvay, NY.

151.    SIM-SAC is owned by Simao (100%).

152.    The 2012 Balance Sheet of SIM-SAC shows a "Current Liabilit[y] . . . Due to PJ" in the amount of $171,027.37.[50]

<u>Toped Management Services, Inc.</u>

153.    Respondent Toped Management Services, Inc. ("Toped Mgmt.") is a corporation organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

154.    Toped Mgmt. is owned by Simao (100%).

155.    Toped Mgmt. is in possession or custody of money and other personal and real property, including real property identified in the Balance Sheets as Bomax, Lot 3 Oriskany, and NYS Route 342 LeRay.[51]

---

[50]    The Court rejects the objection set forth in Paragraph 152 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[51]    The Court rejects the objection set forth in Paragraph 155 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

156.     Simao receives money from Toped Mgmt. in the form of distributions.

157.     Schedule K of Form 1120 of Toped Mgmt.'s tax returns provide that no dividends were paid from 2010 to 2012.[52]

158.     The 2012 Balance Sheet of Toped Mgmt. shows a "Long Term Liabilit[y] . . . Due to PJS" in the amount of $1,016,302.[53]

Thirty One Development LLC

159.     Respondent Thirty One Development LLC ("Thirty One") is a limited liability company organized and existing under the laws of the State of New York, with an office for the transaction of business at 19441 Collins Landing W., Alexandria Bay, NY.

160.     Thirty One is owned by Simao (99%) and River North, LLC (1%).

161.     Simao is the Managing Member of Thirty One.

162.     According to the Balance Sheets, as of year end 2012, Thirty One was in possession or custody of real property, including real property identified in the Balance Sheets as 3805 Route 31 Clay.[54]

163.     Thirty One leases properties or items to third parties, who pay Thirty One rent.[55]

164.     The affairs of Thirty One are governed by an Operating Agreement.[56]

---

[52]     The Court rejects the objection set forth in Paragraph 157 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[53]     The Court rejects the objection set forth in Paragraph 158 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[54]     The Court rejects the objection set forth in Paragraph 162 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[55]     The Court rejects the objection set forth in Paragraph 163 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

[56]     The Court rejects the objection set forth in Paragraph 164 of Respondents' Rule 7.1 Response for the same reasons as stated above in note 2 of this Decision and Order.

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.    Legal Standards Governing Petitioner's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards generally governing Petitioner's claims in this action, the Court will not recite, in their entirety, those general legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law]; Dkt. No. 52 [Resps.' Opp'n Memo. of Law]; Dkt. No. 66, Attach. 3 [Pet.'s Opp'n Memo. of Law].) Instead, the Court will elaborate on those general legal standard only where necessary below in Part III of this Decision and Order.

## III.    ANALYSIS

Generally, the parties' thorough and organized motion papers present the following nine issues: (1) whether the Court must deny Petitioner's motion because that motion is (purportedly) based on inadmissible evidence; (2) whether Petitioner is entitled to an Order pursuant to CPLR

§§ 5225 and 5227 directing the corporate Respondents[57] to turn over all the money and personal property in which Respondent Simao has an interest, until the Judgment is satisifed; (3) whether Petitioner is entitled to a "charging interest" in the distributions, profits and losses allocated to Respondent Simao; (4) whether Petitioner has established the need for the appointment of a receiver under CPLR § 5228; (5) whether Respondent Simao is entitled to the 90-percent income exemption contained in CPLR § 5205(d); (6) whether the Court should exercise its discretion under CPLR § 5240 to stay execution of the Judgment pending disposition of certain of Respondents' ADDCA claims against American Honda Motor Co., Inc., in another proceeding; (7) whether the Court should exercise its discretion under CPLR § 8303(b) to award Petitioner, as a judgment creditor, a sum not exceeding five percent (5%) of the Judgment, due to its motion for enforcement of the Judgment; (8) whether Petitioner is entitled to an award of costs as a prevailing party; and (9) the amount of interest owed. (*See generally* Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law]; Dkt. No. 52 [Resps.' Opp'n Memo. of Law]; Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].)

**A.** **Whether the Court Must Deny Petitioner's Motion Because that Motion Is (Purportedly) Based on Inadmissible Evidence**

In their opposition memorandum of law, Respondents argue that the Court must disregard as inadmissible the following evidence relied on by Petitioner in support of its motion for summary judgment: (a) numerous of the assertions in the affidavit of Petitioner's counsel, and Exhibits F and G to the affidavit, because the assertions are not purported to be based on counsel's personal knowledge, and the exhibits are neither self-authenticating nor admissible; (b)

---

[57]    For purpose of Petitioner's arguments, the "corporate Respondents" consist of the following: (1) B&J Auto Sales, Inc.; (2) Collins Landing Development Corp.; (3) Ives Hill Country Club, Inc.; (4) Sim-Sac Development Corp.; (5) Toped Management Services, Inc.; (6) DealMaker Ford, Inc.; and (7) River North I, Inc.

Exhibits 6 through 53 to Petitioner's Statement of Material Facts because, while they may be authentic (due to their having been produced by Respondents in discovery), they are hearsay under Fed. R. Evid. 802 and do not fall within any of the exceptions contained within Fed. R. Evid. 803 or 804 (in that, *inter alia*, they are not accompanied by the affidavit of a custodian asserting that they are records kept in the ordinary course of business); and (c) Appendix A and B to Petitioner's memorandum of law, because they either rely on Exhibits 6 through 53 to Petitioner's Statement of Material Facts or are based on information whose foundation has not been established. (Dkt. No. 52 [Resps.' Opp'n Memo. of Law].)

In its reply memorandum of law, Petitioner argues that the documents relied on by Petitioner (namely, Respondents' business records, which were produced by Respondents in discovery) are authentic and admissible for the following reasons: (a) Exhibits 6 through 53 were authenticated under Fed. R. Evid. 901(b)(1), 901(b)(4), and 902, because they were admittedly produced by Respondents in response to Petitioner's first demand for the production of documents; (b) Exhibits 6 through 53 are admissible because (i) tax returns are admissible as business records under Fed. R. Evid. 803(6) and as statements of party-opponents under Fed. R. Evid. 802(d)(2), and (ii) Respondents' balance sheets and profit-and-loss statements are admissible as business records under Fed. R. Evid. 803(6), as statements of party-opponents under Fed. R. Evid. 802(d)(2), and pursuant to the residual exception of Fed. R. Evid. 807; and (c) Respondents' reliance on Exhibits 6 through 53 (to support certain assertions in their Response to Petitioner's Statement of Material Facts) undermines any argument of lack of trustworthiness. (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].) In addition, Petitioner's counsel asserts (in a reply affidavit) that the exhibits are admissible because (a) they result from a search of public records which he both directed and reviewed, and (b) the results of at the

assets search matches the admissions contained in Respondents' interrogatory responses and responses to Petitioner's Requests for Admissions. (Dkt. No. 66, ¶ 9 [Modesti Reply Affid.])

After carefully considering the matter, the Court agrees with Petitioner for the reasons stated in its memorandum of law in chief, reply memorandum of law and reply affidavit. To those reasons, the Court adds two points.

First, the Court continues to rely on the analysis set forth above in note 2 of this Decision and Order. None of the cases cited by Respondents on pages 1 through 6 of their opposition memorandum of law persuade the Court that Petitioner cannot present the referenced exhibits in a form that would be admissible in evidence at trial, particularly in light of Respondents' acknowledgment that they produced the exhibits in response to Petitioner's discovery requests, and that the exhibits are true and accurate copies of documents made in the regular course of business.

Second, Exhibits F and G are not cited in Petitioner's Statement of Material Facts, and are thus not relied upon by the Court in determining that the factual assertions contained therein are supported by the record. With regard to the permissibility of the Court's otherwise relying on those exhibits, the Court need not (and thus Court does not) rely on the Department of Motor Vehicle records contained in Exhibit F. However, the Court may (and thus does) rely on the facts contained in Exhibit G, because they are facts of which the Court may take judicial notice under Fed. R. Evid. 201. *See, e.g., Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) ("[D]ocket sheets are public records of which the court could take judicial notice."); *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (noting that court may take judicial notice of the actions taken in related proceedings "to establish the fact of such litigation and related filings"); *Anderson v. Murphy*, 06-CV-1466, 2008 WL 691715, at *1,

n.1 (D. Conn. Mar. 13, 2008) ("The court takes judicial notice of the state court docket sheets and state court documents attached to respondent's memorandum in support of the motion to dismiss.").

    **B.**    **Whether Petitioner Is Entitled to an Order Pursuant to CPLR §§ 5225 and 5227 Directing the Corporate Respondents to Turn Over All the Money and Personal Property in Which Respondent Simao Has an Interest Until the Judgment Is Satisfied**

In its memorandum of law in chief, Petitioner argues that it is entitled to an Order pursuant to CPLR §§ 5225 and 5227 (made applicable pursuant to Fed. R. Civ. P. 69[a][1]) directing the corporate Respondents to turn over all money and personal property in which Respondent Simao has an interest (until the Judgment is satisfied) for the following reasons: (a) according to the corporate Respondents' balance sheets, there are loans due and owing from five of the seven corporate Respondents to Simao, and Petitioner is entitled to collect those loans under CPLR § 5227; and (b) Simao possesses an ownership interest in the corporate Respondents, and Petitioner is entitled to an Order directing the corporate Respondents to turn over all stock certificates in which Simao has an interest to a designated U.S. Marshall under CPLR § 5225(b).  (Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law].)

In their opposition memorandum of law, Respondents argue that the Court must deny Petitioner's request for an Order pursuant to CPLR §§ 5225 and 5227 directing the corporate Respondents to turn over all money and personal property in which Respondent Simao has an interest for the following reasons: (a) Petitioner is not entitled to collect the obligations due and owing from the corporate Respondents to Simao, because the balance sheets on which Petitioner relies are inadmissible, and in any event Petitioner has not shown that the debts are "past due" or "yet to become due, certainly or upon demand of the judgment debtor," or that they "could be

assigned or transferred"; and (b) Petitioner is not entitled to an Order directing Respondents to turn over all stock certificates and/or other documentation evidencing Simao's interests in the corporate Respondents, because Petitioner has failed to show that the stock in the corporate Respondents is of "sufficient value to satisfy the judgment," and in any event, certain of the paper stock certificates are not in the possession of the corporate Respondents and are thus not "capable of delivery." (Dkt. No. 52 [Resps.' Opp'n Memo. of Law].)

In its reply memorandum of law, Petitioner argues that the relief sought against the corporate Respondents is appropriate for the following reasons: (a) the balance sheets showing the debts in question are admissible and business records and, in any event, Respondents admit the obligations due and owing from the corporate Respondents; and (b) the absence of physical stock certificates does not preclude Petitioner's rights with respect to enforcement of the Judgment (and the Court may order Respondents to execute substitute stock certificates as necessary to effect delivery under CPLR § 5225[c]). (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with Petitioner for the reasons stated in its Petitioner's memorandum of law in chief and reply memorandum of law.

### C. Whether Petitioner Is Entitled to a "Charging Interest" in the Distributions, Profits and Losses Allocated to Respondent Simao

In its memorandum of law in chief, Petitioner argues that, pursuant to N.Y. Ltd. Liab. Co. Law §§ 607(a) and 603(a)(3), it is entitled to an assignment of the "membership interest" in the distributions and allocation of profits and losses to which Respondent Simao would be entitled for the following reasons: (a) while N.Y. Ltd. Liab. Co. Law § 607(b) provides that no creditor shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies

28

with respect to, the property of a limited liability company ("LLC"), case law provides that a creditor may interfere in an LLC's operations where the LLC lacks independence from the judgment debtor (who, here, wholly owns the LLCs, is in sole and exclusive control of them, and is permitted to dispose of assets and to declare distributions without input from any other member); (b) in the alternative, Petitioner requests an Order compelling Simao to declare a distribution of the Net Cash Flow determined by the receiver for sixteen of the LLC Respondents, because the operating agreements of those LLC Respondents require that a distribution be declared yearly to distribute the Net Cash Flow; and (c) Petitioner should be substituted as a member of the non-DealMaker LLC Respondents pursuant to N.Y. Ltd. Liab. Co. Law § 604 (conferring on Petitioner all rights that Simao had as a member, including the right to liquidate assets and to declare distributions), because, if Simao's membership interests in the non-DealMaker LLC Respondents were ignored, there would be no member objection to the substitution of Petitioner as a member. (Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law].)

In their opposition memorandum of law, Respondents argue that Petitioner is not entitled to the relief it requests with respect to the LLC Respondents for the following reasons: (a) N.Y. Ltd. Liab. Co. Law § 603(a)(2) expressly prohibits Petitioner from interfering in the operations of the LLC Respondents, and certain of the case law on which Petitioner relies for the existence of an exception to this rule (i.e., *Ricatto v. Ricatto*, 4 A.D.3d 514 [NY App. Div., 2d Dept. 2004]) is distinguishable because its holding turned on N.Y. Domestic Relations Law § 234, which has no relevance to the current action; (b) also pursuant to N.Y. Ltd. Liab. Co. Law § 603(a)(2), the LLC Respondents cannot be compelled to make distributions, which making of which is within the sole discretion of the directors; and (c) also pursuant to N.Y. Ltd. Liab. Co. Law § 603(a)(2), Petitioner cannot be substituted as a member of any of the LLC Respondents. (Dkt. No. 52 [Resps.' Opp'n Memo. of Law].)

In its reply memorandum of law, Petitioner argues that the relief sought against the LLC Respondents is appropriate for the following reasons: (a) the lack of independence between Respondent Simao and the LLC Respondents warrants Petitioner's limited interference in the LLC Respondents' operations (as recognized not just by *Ricatto* but by *Koroleski v. Bader*, 32 A.D.2d 810, 811 [2d Dept. 1969], and *3 West 16th Street, LLC v. Ancona*, No. 153301/13, 2013 N.Y. Misc. LEXIS 4430, at *10 [Sup. Ct N.Y. Cty Sept. 27, 2013]); and (b) in any event, certain of the LLC Defendants are compelled by the operating agreements to declare and make yearly distributions of Net Cash Flow, necessitating (at a minimum) a receiver to determine Net Cash Flow and receive the distributions for application to the Judgment. (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with Petitioner for the reasons stated in its memorandum of law in chief and reply memorandum of law. To those reasons, the Court adds one point.

While Petitioner is conferred all rights that Simao has as a member (until the Judgment is satisfied), Petitioner is, of course, not conferred rights beyond those that Simao has as a member. Moreover, Petitioner must comply with the operating agreements of the LLC Respondents.

**D.** **Whether Petitioner Has Established the Need for the Appointment of a Receiver Under CPLR § 5228**

In its memorandum of law in chief, Petitioner argues that the relevant factors weigh in favor of the Court's exercising its discretion to appoint a receiver pursuant to CPLR § 5228 under the circumstances (including the lack of an alternative remedy available to the creditor, the risk of insolvency, the possibility of fraud against the creditor, the number of judgments entered against the judgment debtor, and the intangibility of the property interest). (Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law].)

In their opposition memorandum of law, Respondents argue that Petitioner is not entitled to the appointment of a receiver under CPLR § 5228 for the following reasons: (a) before filing this proceeding on March 6, 2013, Petitioner did virtually nothing to attempt to enforce the Judgment against Simao (which is a factor considered by the courts in deciding whether to grant requests for the appointment of a receiver); (b) moreover, because there is no turnover of membership interests in the LLC Respondents, there is nothing for a receiver to receive; (c) in any event, if the Court were to order a turnover of a portion of the distributions to Simao by the LLC Respondents, the LLC Respondents would be required to turn the ordered portion of the distributions over to Petitioner without the need of a receiver, which would only result in an unnecessary expense to Simao; and (d) the only relief that Petitioner seeks which it cannot obtain without a receiver is a review of Respondents' books and records, but Petitioner has not met its burden of showing that such a review is warranted (given that the only "evidence" of a risk of fraud is the affidavit testimony of Petitioner's counsel, and the fact that Respondent Simao is doing nothing differently now than he had done before the entry of the Judgment). (Dkt. No. 52 [Resps.' Opp'n Memo. of Law].)

In its reply memorandum of law, Petitioner argues that it has established the need for appointment of a receiver pursuant to CPLR § 5228 because the following factors weigh in favor of such an appointment: (a) the fact that there is no alternative remedy available to the creditor (given the fact that there exist no assets from which satisfaction of the judgment may be obtained by execution without judicial intervention); (b) the fact that the appointment of a receiver will increase the likelihood of satisfaction of the judgment (given the fact that the case involves intangible personal property, a potential for fraud, and a need to receive timely and accurate

financial information from Respondents); (c) the risk of insolvency and a substantial possibility of fraud against the creditor (given the fact that, rather than simply pay the Judgment, Simao is drawing funds from various of the entity Respondents and *purportedly* moving them to other of the entity Respondents); and (d) the financial status of the judgment debtor, the number of judgments entered against the judgment debtor, and the amount of any liens attached to real property owned by the judgment debtor (given that 35 of the entity Respondents have liabilities, mortgages, judgment or other liens against them). (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].) In addition, Petitioner argues that the appointment of a receiver is needed because of (a) the inconsistencies that exist between Respondent Simao's reporting of events and the record's establishment of events support Petitioner's application for a receiver, and (b) the lack of legal sufficiency of Respondents' excuse that, although Respondent Simao received distributions in excess of $3 million over three years, he "reinvested" that money into his entities. (*Id.*)

After carefully considering the matter, the Court agrees with Petitioner for the reasons stated in its memorandum of law in chief and reply memorandum of law. To those reasons, the Court adds the following analysis.

Respondents' argument that Petitioner did "virtually nothing" to attempt to enforce the Judgment against Respondent Simao is not compelling, because of the near-futility of such an attempt in light of the shifting nature of the assets under his control. Similarly, with due respect to Respondents, their argument that Respondent Simao did "nothing differently" after the Judgment was entered (but simply continued to "re-invest" the funds in his businesses as before), while well taken, largely misses the point of Petitioner's argument: he should have done

something different, i.e., pay the Judgment.  The circumstances of this case (which include, but are not limited to, the fact that Respondent Simao essentially ignored the Judgment) leads the Court to believe that he would frustrate this Decision and Order if it neglected to appoint a receiver.

      **E.**        **Whether Respondent Simao Is Entitled to the 90-Percent Income Exemption Contained in CPLR § 5205(d)**

In its memorandum of law in chief, Petitioner argues that it is not limited by CPLR §§ 5205(d)(2) and 5231(b) to the collection of 10% of moneys received by Respondent Simao from Respondents for the following reasons: (a) CPLR § 5205(d)(2) provides merely that "ninety per cent of the earnings of the judgment debtor for his personal services rendered" are exempt from application to the satisfaction of a judgment; (b) here, Simao does not receive any "earnings for personal services rendered," because he has admitted (in his response to Petitioner's Interrogatory Number 8) that he does not receive any wages, cash benefits or any other form of compensation for his services to the LLC or corporate Respondents; (c) CPLR § 5231(b) merely provides the mechanism by which a judgment creditor may execute against a judgment debtor's earnings; and (d) here, Petitioner is not seeking to execute against Simao's "earnings" but to obtain the delivery and sale of personal property and to charge Simao's interests in the LLC Respondents.  (Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law].)

In their opposition memorandum of law, Respondents argue that, pursuant to N.Y. Ltd. Liab. Co. Law § 607(a), Respondent Simao is entitled to the 90-percent income exemption contained in CPLR § 5205(d), which applies because the bonuses, distributions and dividends that Petitioner seeks are not earnings from investments but earnings for Simao's personal services (and, if the Court determines otherwise, Simao respectfully requests that the Court

exercise its discretion under CPLR § 5240 to limit the turnover of distributions from the LLC

Respondents to Petitioner, which distributions are the sole source of Simao's income). (Dkt. No.

52 [Resps.' Opp'n Memo. of Law].)

In its reply memorandum of law, Petitioner argues that the 90-percent income exemption

contained in CPLR § 5205(d)(2) does not apply for the following reasons: (a) Petitioner does not

seek to execute against income from Respondent Simao's "personal services"; (b) the case relied

on my Respondents (*FDIC v. Wirth*, No. M18-302, 1991 U.S. Dist. LEXIS 13706 [S.D.N.Y. Oct.

2, 1991]) is distinguishable because in that case the judgment debtor received monthly

distributions of profits as opposed to a weekly salary in exchange for the personal services he

provided to a partnership, while in the current case Simao is simply an investor in the various

LLC Respondents; and (c) in the alternative, the Court may, and should, exercise its discretion

under CPLR § 5205(d) to decrease the 90-percent income exemption contained in CPLR §

5205(d)(2) based on a finding that Simao does not need $900,000 per year (i.e., 90 percent of the

$1,000,000 he received per year) to satisfy the reasonable requirements of himself and his

dependents from 2010 through 2012. (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with Petitioner for the reasons

stated in its memorandum of law in chief and reply memorandum of law. To those reasons, the

Court adds one point.

In his affidavit, Respondent Simao has not persuaded the Court that he could not subsist

on his savings, income from such savings, or personal assets that could be liquidated. Nor has

Respondent Simao persuaded the Court of the amount of the income that he and his dependents

would need to subsist. However, out of an abundance of caution, the Court will limit Petitioner

to the collection of 90% of moneys received by Respondent Simao from Respondents until the Judgment plus interest is satisfied.

**F.** **Whether the Court Should Exercise Its Discretion Under CPLR § 5240 to Stay Execution of the Judgment Pending Disposition of Certain of Respondents' ADDCA Claims Against American Honda Motor Co., Inc., in Another Proceeding**

In its memorandum of law in chief, Petitioner argues that the action against American Honda Motor Co., Inc., under the Automobile Dealers' Day in Court Act (ADDCA) is *not* grounds for this Court to invoke its equity power under CPLR § 5240 to stay Petitioner's execution of the Judgment pending a determination of the claims in that action for the following reasons: (a) the ADDCA claim of certain Respondents against Petitioner was previously dismissed by this Court based upon its Court's determination (which was upheld on appeal) that Petitioner is not an automobile manufacturer and had not acted in bad faith; (b) courts apply CPLR § 5240 with caution to harmonize the judgment debtor's interest in avoiding irreparable harm with the legitimate interest of a creditor in securing payment of a valid debt, and none have done so in the situation presented in this case; (c) while American Honda Motor Co., Inc., is Petitioner's parent company, that fact does not impute liability to Petitioner for any judgment Respondents may obtain against American Honda Motor Co., Inc.; and (d) any limited harm resulting from Petitioner's effort to obtain satisfaction of the Judgment is substantially outweighed by Petitioner's right to be paid what two courts have now determined Petitioner is owed (before Simao continues to shield his funds through loans to entities he owns, in order to line his pockets with distributions from the entities in repayment of the loans). (Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law].)

In their opposition memorandum of law, Respondents argue that the Court should use its discretion under CPLR § 5240 to restrain execution on the Judgment pending disposition of the claims against American Honda Motor Co., Inc., in the ADDCA action, because, if Petitioner is granted the relief it requests in this action, the granting of that relief will "effectively eliminate" Simao's ability to fund the pursuit of his valid claims in the ADDCA action against Petitioner's parent, American Honda Motor Co., Inc. (Dkt. No. 52 [Resps.' Opp'n Memo. of Law]; *see also* Dkt. No. 52, Attach. 3, at ¶ 21 [Simao Affid.].)

In its reply memorandum of law, Petitioner argues that Respondent Simao's request for a stay under CPLR § 5240 is improper for the following reasons: (a) as the First Department has recognized in *Santangelo v. Estate of Sol Goldman*, 253 A.D.2d 79, 80 (NY App. Div., 1st Dept. 1998), CPLR § 5240 does not "allow a court . . . to reduce the judgment to the extent of an unadjudicated offset claimed by the judgment debtor"; (b) in any event, no offset exists in this case because a subsidiary is not responsible for claims against its parent, especially claims that a court has previously ruled have not bearing on the subsidiary (such as the ADDCA claims of certain Respondents against American Honda Motor Co., Inc.); and (c) to stay the enforcement of the Judgment in this case so that the judgment debtor can pursue other unrelated litigation would, in addition to being a novel use of CPLR § 5240, permit a further waste of assets that could be used to satisfy the Judgment. (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with Petitioner for the reasons stated in its memorandum of law in chief and reply memorandum of law. To those reasons, the Court adds one point.

In his affidavit, Respondent Simao has not shown (a) the cost of the other litigation, (b) that he lacks savings or assets to fund it, (c) that it would not continue without him, or (d) that his counsel would not continue to represent him on a contingency basis. (Dkt. No. 52, Attach. 3 [Simao Affid.].)

### G. Whether the Court Should Exercise Its Discretion Under CPLR § 8303(b) to Award Petitioner, as a Judgment Creditor, a Sum Not Exceeding Five Percent (5%) of the Judgment, Due to Its Motion for Enforcement of the Judgment

In its reply memorandum of law, Petitioner argues that the Court should, in its discretion under CPLR § 8303(b), award Petitioner, as a judgment creditor, a sum not exceeding five percent (5%) of the Judgment, related to its motion for enforcement of the Judgment. (Dkt. No. 66, Attach. 3 [Pet.'s Reply Memo. of Law].)

After carefully considering the matter, the Court denies this request without prejudice. This request was never contained in Petitioner's memorandum of law in chief but appeared for the first time in its reply memorandum of law. Generally, a reply memorandum of law should be limited to a discussion of the issues raised in the opposition memorandum of law and should not discuss a new issue or present a new request for relief. *See Playboy Enter., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y.1997) ("Arguments made for the first time in a reply brief need not be considered by a court.") (collecting cases). Here, Respondents were deprived of the opportunity to respond to Petitioner's late-blossoming request. In the alternative, the request is denied as unsupported by a showing of cause, because it neither recited nor applied the legal standard governing such a request.

**H. Whether Petitioner Is Entitled to an Award of Costs as a Prevailing Party**

In its memorandum of law in chief, Petitioner argues that it is entitled to an award of costs as a prevailing party for the following reasons: (a) both Fed. R. Civ. P. 54(d) and CPLR § 8101 provide for the award of costs to the prevailing party; and (b) while CPLR § 5225(b) excludes an award of such costs where the respondent did not dispute the judgment debtor's interest or right to possession, Respondents *have* disputed Petitioner's right to the relief sought in this special proceeding. (Dkt. No. 45, Attach. 23 [Pet.'s Memo. of Law].)

In their opposition memorandum of law, Respondents do not specifically oppose this request. (*See generally* Dkt. No. 52 [Resps.' Opp'n Memo. of Law].)

In its reply memorandum of law, Petitioner repeats its request for costs. (Dkt. No. 66, Attach. 3, at 48 [attaching page "40" of Pet.'s Reply Memo. of Law].)

In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

After carefully considering the matter, the Court finds that Petitioner has met its lightened burden for the reasons stated in its memorandum of law in chief. However, the Court reserves decision on the amount of such costs, pending the receipt of further briefing on the issue by the parties.

## I. Amount of Interest Owed

In its memorandum of law in chief, Petitioner argues that, as of July 4, 2014, there was a balance due and owing from Respondent Simao to Petitioner in the amount of $3,631,890.53, including principal and accrued post-judgment interest at the federal rate of 0.11% per year. (Dkt. No. 45, Attach. 23, at 12 [attaching page "5" of Pet.'s Memo. of Law].)  While Petitioner attempts to supports this argument with a citation to an attorney affidavit, the attorney affidavit does not set forth the calculations supporting the argument.  (Dkt. No. 45, Attach. 20, at ¶ 10 [Modesti Affid.].)  Assuming Petitioner's assertion of the federal interest rate is correct, the Court calculates the balance due and owing as $3,631,*054.63* ($3,622,715.03 + ($3,622,715.03 x .11 percent x 2.266 years)[58] - $690.38).  In any event, Respondents have not responded to Petitioner's argument, and the interest would have grown as of the date of this Decision and Order.  As a result, the Court will revisit the issue of how much interest is owed at a later time, after receipt of further briefing on the issue by the parties.

**ACCORDINGLY,** it is

**ORDERED** that Petitioner's motion for summary judgment (Dkt. No. 45) is **GRANTED**; and it is further

**ORDERED** that the entity Respondents shall pay over to Petitioner ninety percent 90% of any money in which Respondent Simao (including any debt or obligation due and owing from the entity Respondents to Respondent Simao) until Petitioner's Judgment plus interest is satisfied; and it is further

---

[58]    The Judgment was entered on March 29, 2012. 827 days elapsed between March 29, 2012, and July 4, 2014. 827 days equals 2.266 years.

**ORDERED** that, if the above-referenced amount to be so paid is insufficient to satisfy Petitioner's Judgment plus interest,

> (1) the entity Respondents shall to deliver to the U.S. Marshals Service for sale any other personal property in which Respondent Simao has an interest (including all documents evidencing Simao's ownership interest in the corporation Respondents) until Petitioner's Judgment plus interest is satisfied, and

> (2) Petitioner is assigned Respondent Simao's membership interest in the distributions and allocation of profits and losses of the LLC Respondents (to which Respondent Simao would be entitled) until Petitioner's Judgment plus interest is satisfied; and it is further

**ORDERED** that a Receiver be appointed for the following purposes:

> (1) to review the entity Respondents' books and records within TEN (10) DAYS from the date of the Order identifying the Receiver, and every THIRTY (30) DAYS thereafter;

> (2) to accept Respondent Simao's membership interests in the LLC Respondents; and

> (3) to receive, on an ongoing and continuing basis until the Judgment with interest is paid in full, all profits of the entity Respondents, and all distributions, dividends and bonuses declared by the entity Respondents and/or the Receiver, to which Respondent Simao would otherwise be entitled; and it is further

**ORDERED** that, within THIRTY (30) DAYS of the date of this Decision and Order, Petitioner shall file a proposed Order identifying the Receiver and specifying the property to be received, the duties of the receiver and the manner in which they are to be performed, consistent with this Decision and Order; and it is further

**ORDERED** that, also within THIRTY (30) DAYS of the date of this Decision and

Order, Petitioner shall file a renewed motion briefing the Court on the following three issues: (1)

the legal standard governing Petitioner's request for a sum, not exceeding five percent of the

Judgment, under NY CPLR 8303(b); (2) the amount of costs to which Petitioner is entitled as a

prevailing party; and (3) the amount of interest that Petitioner is owed; and it is further

**ORDERED** that, within FOURTEEN (14) DAYS of their receipt of the

above-referenced motion, Respondents shall file a response.

Dated: March 1, 2016
      Syracuse, New York

                              Hon. Glenn T. Suddaby
                              Chief U.S. District Judge