UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMERICAN HONDA FINANCE CORP.,

                      Petitioner,              7:13-CV-0260
                                                            (GTS/ATB)
v.

ROUTE 57 DEVELOPMENT, LLC; PRIME, LLC;
TOPED DEVELOPMENT LLC; WARNERS ROAD
DEVELOPMENT, LLC; ONONDAGA
DEVELOPMENT, LLC; 81 FRONT STREET
DEVELOPMENT, LLC; ARBEL LLC; AUBURN
ROUTE 5 DEVELOPMENT LLC; AUTOMOBILE
FRANCHISE ACQUISITIONS, LLC; B&J AUTO
SALES, INC.; COLLINS LANDING DEVELOPMENT
CORP.; DEALMAKER AUTO GROUP, LLC;
DEALMAKER DODGE, LLC; DEALMAKER FORD
OF CLAY, LLC; DEALMAKER NISSAN, LLC;
DEALMAKER FORD, INC.; DEALMAKER HONDA
OF POTSDAM, LLC; DEALMAKER LEASING, LLC;
DEALMAKER MANAGEMENT, LLC; DEALMAKER
OF OGDENSBURG, LLC; DEALMAKER OF POTSDAM,
LLC; DEALMAKER, LLC; FRANCHISE ACQUISITIONS,
LLC; IVES HILL COUNTRY CLUB, INC.; KIMBROOK
ROUTE 31 LLC; LIBERTY SACKETS HARBOR LLC;
LOBUT DEVELOPMENT, LLC; RIVER NORTH I, INC.;
RIVER NORTH, LLC; SIM-SAC DEVELOPMENT CORP.;
TOPED MANAGEMENT SERVICES, INC.; V.M.
PAOLOZZI IMPORTS, INC.; THIRTY ONE
DEVELOPMENT LLC; and PHILIP J. SIMAO,

                      Respondents.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HARRIS BEACH LAW FIRM<br>  Counsel for Petitioner<br>333 West Washington Street, Suite 200<br>Syracuse, NY 13202 | JULIAN B. MODESTI, ESQ.<br>BRIAN D. ROY, ESQ. |

| | |
|---|---|
| BOND, SCHOENECK & KING, PLLC<br>  Counsel for Respondents<br>One Lincoln Center<br>Syracuse, NY 13202 | BRIAN J. BUTLER, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by American Honda Finance Corp. ("Plaintiff") against Philip J. Simao and thirty-four entities ("Respondents"), are the following three motions: (1) Petitioner's motion to enforce the parties' settlement agreement of July 20, 2017, pursuant to which Respondents agreed to pay Petitioner $2,952,500.00 over a term (rather than pay $3,652.003.88 as a percentage of Respondent Simao's receipts, as ordered in the Court's Amended Judgment of May 17, 2016); (2) Petitioner's letter-motion requesting an Order (a) granting Petitioner leave to commence a civil contempt proceeding against Respondents pursuant to Local Rule 83.5(a) as a result of Respondents' non-compliance with the Court's Order Appointing Receiver of May 13, 2016, or, in the alternative, (b) punishing Respondents for contempt pursuant to Fed. R. Civ. P. 69 and N.Y. C.P.L.R. §§ 5210 and 5251 as a result of that non-compliance; and (3) Petitioner's renewed letter-motion requesting an Order granting Petitioner leave to commence a civil contempt proceeding against Respondents pursuant to Local Rule 83.5(a) as a result of Respondents' continued non-compliance with the Court's Order Appointing Receiver. (Dkt. Nos. 114, 133, 137.) For the reasons set forth below, Petitioner's motion to enforce the parties' settlement agreement is denied, and Petitioner's letter-motions are granted.

I.	RELEVANT BACKGROUND

Because this Decision and Order is intended primarily for the review of the parties, the Court will assume the reader's familiarity with the procedural history of this action, the parties' arguments on the current motions, and the legal standards governing those motions. The Court will recite the relevant portions of this information only where necessary below in the analysis section of this Decision and Order.

II.	ANALYSIS

A.	Whether the Court Should Grant Petitioner's Motion to Enforce the Parties' Settlement Agreement

A threshold issue presented by the parties' briefing of Petitioner's motion to enforce the parties' settlement agreement is whether the Court possesses jurisdiction over the parties' post-judgment settlement agreement. (*See, e.g.,* Dkt. No. 123, Attach. 2, at 5-8 [attaching pages "1" through "4" of Respondents' Opp'n Mem. of Law]; Dkt. No. 126, at 7-11 [attaching pages "3" through "7" of Petitioner's Reply Mem. of Law].) As a result, the Court will address that issue first.

1.	Relevant Procedural History

On May 13, 2016, the Court entered a Judgment, which it amended on May 17, 2016. (Dkt. Nos. 83, 84.) Also on May 13, 2016, the Court entered an Order Appointing Receiver, which directed, *inter alia*, that (1) the Receiver shall periodically file letter-applications and accountings, and (2) the Court shall punish Respondents' non-compliance with the terms of the Order. (Dkt. No. 82, at 4.) During the twelve months that followed, the Receiver filed status reports and the Court filed Text Orders pursuant to the Order Appointing Receiver. (*See, e.g.,* Dkt. Nos. 90, 93, 94, 96, 97, 100, 102.)

On June 6, 2017, Petitioner filed a Settlement Agreement signed by all parties, pursuant to which Respondents agreed to pay Petitioner $2,952,500.00 over a term (rather than pay $3,652.003.88 as a percentage of Respondent Simao's receipts, as ordered in the Court's Amended Judgment of May 17, 2016). (Dkt. No. 103.) Along with the Settlement Agreement, Petitioner filed (1) a stipulation of dismissal without prejudice signed by all counsel who have appeared in the action, and (2) a request that the Court "So Order" both the Settlement Agreement and Stipulation. (*Id.*)[1] After carefully considering precisely what action would be "dismissed" by the Court's Order (given that no claims or even appeals were then pending), and noting that the request did not regard the conditions on which Petitioner would consider the Amended Judgment satisfied,[2] the Court denied Petitioner's request without prejudice because an Amended Judgment had been issued in the case more than a year before, rendering the action "technically closed" except for the Court's supervision of the activities of the Receiver in order to enforce the Amended Judgment. (Dkt. No. 104.)

---

[1] Despite the fact that Petitioner filed a Stipulation signed by all parties who had appeared thus far in the action (thus suggesting that Petitioner was proceeding under Fed. R. Civ. P. 41[a][1][ii], which requires no court order to effect a dismissal), the Court liberally construed Petitioner's submission as an attempt to proceed pursuant to Fed. R. Civ. P. 41(a)(2), which requires a Court's finding that the terms of the dismissal are "proper" in order to effect such a dismissal.

[2] Had Petitioner moved to reopen the Amended Judgment for the purpose of modifying it under Fed. R. Civ. P. 60(b)(5) or 60(b)(6) in order to relieve Respondents from certain portions of it (and thus extinguish those portions) on the ground that the parties had reached a superseding settlement agreement, the Court might have reached a different conclusion. *See Protective Closures Co. v. Clover Indus., Inc.*, 394 F.2d 809, 812-13 (2d Cir. 1968). However, Petitioner chose not to file such a motion. (*See generally* Docket Sheet.)

Now the parties' disagreement over Respondents' performance under the Settlement Agreement has once again brought to the Court the issue of the limits of its remaining subject-matter jurisdiction in this action.

## 2.  Parties' Arguments

Respondents argue that the Court does not possess subject-matter jurisdiction to enforce the parties' settlement agreement for the following reasons: (a) as explained by the U.S. Supreme Court in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), district courts retain such jurisdiction only if either (i) the dismissal order specifically retains such jurisdiction for that purpose or (ii) the dismissal order incorporates the terms of the settlement agreement; (b) this rule applies even where, as here, the parties agreed that the court shall retain jurisdiction; (c) here, neither of those two prerequisites was satisfied (and, indeed, the Court expressly denied the parties' request to "So Order" the settlement agreement); and (d) as a result, in order to enforce the settlement agreement, Petitioner must commence a new lawsuit for breach of contract. (Dkt. No. 123, Attach. 2, at 5-8 [attaching pages "1" through "4" of Respondents' Opp'n Mem. of Law].)

Petitioner replies that the Court does possess subject-matter jurisdiction to enforce the parties' settlement agreement for the following reasons: (a) the Supreme Court's decision in *Kokkonen* does not apply because it conditioned a court's retention of subject-matter jurisdiction on what its dismissal order stated, and here there was no dismissal order and thus no opportunity for the Court to consider or grant a request for the retention of subject-matter jurisdiction (which, in fact, the Court has continued to exercise with regard to the supervision of the Receiver); (b) the Court's exercise of subject-matter jurisdiction over the supervision of the Receiver effectively

5

extended its subject-matter jurisdiction to the enforcement of the entire action or at least the enforcement of the Amended Judgment; (c) this is because (i) Petitioner's breach-of-contract claim with regard to the settlement agreement is factually interdependent with the legal claims resolved through the Amended Judgment, and/or (ii) by deciding Petitioner's breach-of-contract claim with regard to the settlement agreement, the Court would be managing its proceeding, vindicating its authority and/or effectuating its decree (specifically, its Amended Judgment); and (d) the fact that the Court's Case Management Electronic Case Filing System (CM/ECF) notes that this case is (administratively) "closed" has no bearing on whether the Court possesses subject-matter jurisdiction over the parties' settlement agreement, as evidenced by the fact that, despite the notation, the Court has continued to exercise subject-matter jurisdiction over the supervision of the Receiver. (Dkt. No. 126, at 7-11 [attaching pages "3" through "7" of Petitioner's Reply Mem. of Law].)

### 3. Governing Legal Standards

"[A] district court 'does not automatically retain jurisdiction to hear a motion to enforce' a settlement agreement simply by virtue of having disposed of the original case." *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015). Granted, the doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378 (1994). Specifically, the doctrine "allows a district court (1) to decide matters that are 'factually interdependent' with another matter before the court, or (2) to take actions necessary 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Henderickson*, 791 F.3d at 358 (citing *Kokkonen*, 511 U.S. at 379-80). Notably, a court may

6

exercise ancillary jurisdiction over "those claims and actions which are necessary to effectuate its own judgments." *Village of W. Hampton Dunes v. New York*, 89 F. Supp. 3d 433, 443 (E.D.N.Y. 2015) (citing *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 105 [2d Cir. 2001]). However, a court's ancillary jurisdiction ends there. Indeed, the Supreme Court has "cautioned against the exercise of jurisdiction over proceedings that are entirely new or original" or "where the relief sought is of a different kind or on a different principle than that of the prior decree." *Peacock v. Thomas*, 516 U.S. 349, 357 (1996).[3] Finally, these limits on ancillary jurisdiction apply in the case of a motion to enforce a settlement agreement that was reached (not simply after a dismissal order was issued but) after a judgment was issued,[4] except when the motion to enforce the settlement agreement was filed at the time there was pending a post-judgment motion (such as, perhaps, a motion for attorneys fees and costs) that would be mooted by the granting of the

---

[3] With regard to the above-stated point of law, it bears noting that the Court understands a motion to *enforce* a judgment pursuant to Fed. R. Civ. P. 69 or 70 as being quite different from a motion to *amend* a judgment pursuant to Fed. R. Civ. P. 60. *See Vento v. Crithfield*, 09-CV-0174, 2014 WL 12749232, at *4 (D. V.I. Sept. 30, 2014) (characterizing a motion to enforce a judgment as "conflicting" with a motion to amend a judgment).

[4] *See, e.g., Jordan City of Detroit*, 595 F. App'x 486, 487 (6th Cir. 2014) (noting that, previously, district court concluded that it lacked subject-matter jurisdiction over defendant's motion to enforce a post-judgment settlement agreement); *Amorosi v. Molino*, 06-CV-5524, 2010 WL 3058450, at *1-2 (E.D. Pa. Aug. 2, 2010) (holding that district court lacked subject-matter jurisdiction over plaintiff's motion to enforce a post-judgment settlement agreement); *Hertenstein v. Kimberly Home Health Care, Inc.*, 69 F. Supp.2d 1341, 1344 (D. Kan. 1999) (holding that district court lacked subject-matter jurisdiction over plaintiff's motion to enforce a post-judgment settlement agreement). Indeed, at least one district court has held that the limits on ancillary jurisdiction apply with regard to motions to enforce a settlement agreement even when the settlement agreement was reached *before* a judgment was issued, if the agreement was not brought to the attention of the court until after the judgment was issued. *See Galera v. Relief Net Road Servs., Inc.*, 13-CV-4723, 2015 WL 3386850, at *2 (N.D. Tex. May 26, 2015).

7

motion to enforce.[5]

## 4. Court's Findings and Conclusions

After carefully considering the matter, the Court rejects Petitioner's arguments for the reasons stated by Respondents. To those reasons, the Court adds the following analysis.

The Court cannot find how exercising jurisdiction over the parties' settlement agreement would allow the Court to do either of two things: (1) decide matters that are factually interdependent with another matter already pending before the Court (such as a motion for attorney's fees or costs); or (2) take action necessary to manage its proceedings, vindicate its authority, and effectuate its decrees (such as its Amended Judgment).

With regard to the decision of a factually interdependent matter, the Court can find no such matter. More specifically, the Court can find no post-judgment motion that was pending on the docket when Petitioner filed its motion to enforce on March 20, 2018, much less any such motion that would have been mooted by an Order granting the motion to enforce (such as a motion for attorney's fees or costs). (*See generally* Docket Sheet.) Granted, an Order granting the motion to enforce would have apparently rendered the Receiver (who had been appointed by Order) no longer necessary. (Dkt. No. 99, at 1-2 [letter from Respondents to Court filed March 15, 2017, stating, "[O]nce the settlement is signed, all parties agree the Receiver would no longer be necessary"]; Dkt. No. 114, Attach. 3 [Settlement Agreement, stating that the required

---

[5] *See Ulliman Schutte Constr., Inc. v. Emerson Process Mgmt. Power & Water Solutions*, 02-CV-1987, 2007 WL 1794105, at *1 (D.D.C. June 19, 2007) (finding that the court possessed subject-matter jurisdiction over a motion to enforce a post-judgment settlement agreement only because the motion to enforce was factually interrelated with a pending motion for attorney's fees and costs, which would have been mooted if the motion to enforce had been granted in that the relief would have been granted); *accord, Buchanan v. W. Whiteland Twp.*, 08-CV-0462, 2009 WL 879038, at *2 (E.D. Pa. March 31, 2009).

payments should be delivered to Attorney Modesti in care of Petitioner, and making no mention of the Receiver].) However, while having surface appeal, this fact is ultimately unpersuasive, because it does not help answer the essential question of whether granting the motion to enforce would have decided or even impacted a matter over which the Court possesses subject-matter jurisdiction, i.e., the supervision of the Receiver pursuant to the Order Appointing Receiver. To this question, the Court must answer no.

Pursuant to the Order Appointing Receiver, the Court does not understand itself to possess the plenary authority to supervise the Receiver; rather, the Court understands itself to possess the authority merely to perform a series of discrete acts, such as (1) deciding the Receiver's requests (by "letter motion") for further instructions and/or further power, (2) deciding the Receiver's requests (by "application") to employ legal counsel, (3) deciding the Receiver's requests (by "letter application") to make bank account withdrawals, and (4) deciding the Petitioner's requests (by motion) to punish Respondents for contempt of Court. (Dkt. No. 82, at 4, 6.) As of March 20, 2018, there was no such request pending. (*See generally* Docket Sheet.) Stated another way, if, unbeknownst to the Court, Petitioner were to instruct the Receiver to stop performing his duties for some reason (such as its decision that the Amended Judgment had been satisfied), and the Receiver were to comply with that instruction, then the Court would not be moved to act again in the case.

With regard to an action necessary to manage the Court's proceedings, vindicate its authority, and effectuate its decrees, the Court can find no such necessity. For the reasons set forth in the two preceding paragraphs, the Court rejects the notion that granting the motion to enforce is necessary to manage the Receiver or vindicate the Court's authority to appoint a

9

Receiver. (If anything, granting the motion would suffice to essentially eliminate the Receiver, in a way contradicting the Court's authority to appoint the Receiver.) Nor is granting the motion to enforce necessary to effectuate the Court's decrees, specifically, the Court's Amended Judgment. Indeed, to the contrary, granting the motion to enforce would essentially extinguish the Amended Judgment, which provides for greater monetary relief than does the settlement agreement.

For all of these reasons, the Court denies Petitioner's motion to enforce the settlement agreement based on a lack of subject-matter jurisdiction.

### B. Whether the Court Should Grant Petitioner's Letter-Motions for an Order (a) Granting It Leave to Commence a Civil Contempt Proceeding Against Respondents Pursuant to Local Rule 83.5(a) Due to Respondents' Non-Compliance with the Court's Order Appointing Receiver, or (b) Punishing Respondents for Contempt Pursuant to Fed. R. Civ. P. 69 and N.Y. C.P.L.R. §§ 5210 and 5251 Due to that Non-Compliance

#### 1. Parties' Arguments

Generally, in its first letter-motion, Petitioner asserts the following three arguments: (1) Respondent Simao (individually and as an officer or member of the other Respondents) is in contempt by breaching four of his obligations under the Court's Order Appointing Receiver; (2) as a result, the Court should either (a) permit Petitioner to commence a civil contempt hearing pursuant to Local Rule 83.5(a), or (b) simply hold Respondents in contempt and punish them pursuant to N.Y. C.P.L.R. §§ 5210 and 5251 and Fed. R. Civ. P. 69; and (3) should it find Respondents in contempt, the Court should sanction them in three ways. (Dkt. Nos. 133, 137.)

More specifically, the five breaches in question are as follows: (1) breaching the obligation to deposit directly into the Receiver's bank account the (post-Order Appointing Receiver) distributions from the entity Respondents for allocation by the Receiver between Petitioner (in the amount of 90%) and Respondent Simao (in the amount of 10%), in violation of

10

a directive on page 4 of the Order Appointing Receiver, by orchestrating transfers directly between the entity Respondents and by the entity Respondents to himself; (2) breaching the obligation to not interfere with the duties and actions of the Receiver, in violation of a directive on page 5 of the Order Appointing Receiver, by taking the aforementioned actions; (3) breaching the obligation to not interfere with the duties and actions of the Receiver, in violation of a directive on page 5 of the Order Appointing Receiver, by causing the entity Respondents to falsely report no distributions in 2017 and 2018; (4) breaching the obligation to respond to inquires from, and provide documents requested by, the Receiver (e.g., the requests of May 21, 2018, and thereafter) within three calendar days, in violation of a directive on page 5 of the Order Appointing Receiver; and (5) breaching the obligation to name the Receiver as an additional insured on all insurance in connection with any real property owned by the entity Respondents, in violation of a directive on page 5 of the Order Appointing Receiver. (*Id.*)

The three forms of relief requested are as follows: (1) an Order compelling Respondents to continue making $20,000 monthly payments to the Receiver; (2) an Order reassessing whether distributions should be based on a net cash-flow analysis versus based on "profit" as currently provided for under the Order Appointing Receiver; and (3) an Order compelling Respondents to deposit into the Receiver's bank account the net proceeds remaining after the payment of mortgages (exclusive of mortgages/notes held by Respondents) and related closing costs upon the sale or liquidation of properties, equipment and improvements owned by the Respondents. (*Id.*; *see also* Dkt. No. 131, at 5-6.)

Generally, in response,[6] Respondents assert the following two arguments: (1) there has been no breach of the Order Appointing Receiver because (a) all of the purported breaches referenced by Petitioner occurred before the date on which Petitioner ceased consenting to a stay of the Receiver's activities (i.e., March 13, 2017) or at least before the date on which deposits of $20,000 per month were to begin being made (i.e., March of 2018), (b) in response to the Receiver's request of May 21, 2018, and thereafter, Respondents have been "working cooperatively to provide that information," and (c) on July 5, 2018, Respondents made a "good faith" payment of $250,000 (increasing the total amount that has been paid to $310,000); and (2) the three forms of relief requested by the Petitioner (which are the first two forms of relief requested by the Receiver) "fall outside the scope of the Order Appointing Receiver and will be dependent on whether or not the settlement agreement is enforceable or the parties are able to reach an agreement following payment by Respondents to Petitioner on today's date." (Dkt. No. 134.)

Generally, in its second letter-motion, Petitioner reiterates its request for leave to file a civil contempt motion toward the end of obtaining the three forms of relief requested in its first letter-motion based on the five breaches described in its first letter-motion, which have not been rectified since the filing of the first letter-motion. (Dkt. No. 137.)

---

[6] Although Respondents stylized their letter of July 5, 2018, as merely a response to the Receiver's Fifth Status Report, the Court construes the letter also as a response to Petitioner's first letter-motion for three reasons: (1) Respondents' letter was filed two hours and 23 minutes after Petitioner's first letter-motion; (2) Respondents' letter expressly responds to the issue of whether to hold them in "contempt" for the reasons offered by Petitioner; and (3) Respondents filed no subsequent response to Petitioner's first letter-motion. (Dkt. No. 134.)

### 2. Governing Legal Standard

"Ordinarily, a hearing is required before a court may award civil contempt sanctions, but no hearing is required where there are no material facts in dispute." *Sulzer Mixpac USA, Inc. v. Shanghai NSJ Hardware Ltd.*, 09-CV-9705, 2013 WL 5997707, at *3 (S.D.N.Y. Nov. 13, 2013), *adopted by* 2014 WL 793086 (S.D.N.Y. Feb. 25, 2014). To show that civil contempt relief is merited, "'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 515 (E.D.N.Y. 2004) (quoting *Perez v. Danbury Hosp., Danbury Office of Physician Servs., P.C.*, 347 F.3d 419, 424-45 [2d Cir. 2003]).

### 3. Findings and Conclusions

After carefully considering the matter, the Court grants Petitioner's letter-motions for leave to commence a civil contempt proceeding pursuant to Local Rule 83.5(a) for the reasons stated in Petitioner's letter-motions and the Receiver's Fifth Status Report. (Dkt. Nos. 131, 133, 137.) To those reasons, the Court adds the following analysis

With all due respect to Respondents' counsel, the Court finds Respondents' response to Petitioner's assertions that there have been five breaches of the Order Appointing Receiver to be wholly unsatisfactory. For example, the Court has difficulty understanding how the temporary stay of the activities of the Receiver (which was directed by Petitioner apparently based on Respondents' declarations of their intent to settle the parties' dispute) could have had any impact on Petitioner's first two charges: that the entity Respondents made distributions directly to Respondent Simao rather than deposit them in the Receiver's bank account as directed in the

Order Appointing Receiver. Similarly, the Court does not understand how Respondent Simao could have made a payment of $250,000 on July 5, 2018, when, as reported to the Receiver, there had been no distributions from the entity Respondents in 2017 or 2018. (Dkt. No. 131, at 4.) Furthermore, Respondents' assertion that they have been "working cooperatively" with the Receiver to comply with his requests for information appears belied by the Receiver's Fifth Status Report. (*See, e.g.,* Dkt. No. 131, at 5 ["The detail of distributions was not provided by the Respondents."].) Finally, nowhere in their response do Respondents even attempt to rebut Petitioner's assertion regarding the breach of the obligation to name the Receiver as an additional insured. (*See generally* Dkt. No. 134.) Under the circumstances, the Court finds that it may alternatively proceed pursuant to N.Y. C.P.L.R. §§ 5210 and 5251 and Fed. R. Civ. P. 69. However, the Court will not do so merely out of a desire to afford Respondent Simao a further opportunity to be heard before the full range of sanctions requested by Petitioner are imposed.

**ACCORDINGLY**, it is

**ORDERED** that Petitioner's motion to enforce the settlement agreement (Dkt. No. 114) is **DENIED**; and it is further

**ORDERED** that Petitioner's two letter-motions for an Order granting Petitioner leave to commence a civil contempt proceeding against Respondents pursuant to Local Rule 83.5(a) as a result of Respondents' non-compliance with the Court's Order Appointing Receiver of May 13, 2016 (Dkt. Nos. 133, 137) are **GRANTED**.

Dated: November 15, 2018
      Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge